Barbara J. Morris, Appellant, v Snappy Car Rental, Inc., Respondent.

Fourth Department, March 12, 1993

### APPEARANCES OF COUNSEL

*Thomas H. Burton,* Buffalo *(Jeffrey Marcus* of counsel), for appellant.

*Burgio, Kita & Curvin,* Buffalo *(Steven Curvin* of counsel), for respondent.

### OPINION OF THE COURT

LAWTON, J.

On October 5, 1989, plaintiff Barbara J. Morris* entered into a 30-day rental agreement with defendant Snappy Car Rental (Snappy) for the rental of a 1990 Dodge Spirit. The rental agreement was printed on both sides of a single sheet of paper. The front of the rental agreement contained a

---

* Plaintiff is referred to in the agreement as "renter".

provision relating to insurance, which provided: "THIS VEHICLE IS NOT COVERED FOR BODILY INJURY OR PROPERTY DAMAGE INSURANCE BY SNAPPY AND COVERAGE SHALL BE PROVIDED BY RENTER OR RENTER'S EXISTING INSURANCE". When plaintiff entered into the agreement, she initialed a space adjacent to that provision and declined to purchase personal accident insurance at the rate of $2 per day. The front side of the rental agreement also contained a provision that stated: "I HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS ON BOTH SIDES OF THIS RENTAL AGREE-MENT, AND AGREE TO RETURN VEHICLE TO SNAPPY AT THE ABOVE LOCATION ON OR BEFORE THE 'DUE BACK DATE'."

On the reverse side of the rental agreement, paragraph 5 provided that members of the renter's immediate family who were 21 years of age or older and who permanently resided with renter were authorized to operate the rental vehicle. Additionally, paragraphs 6 and 9 provided that:

"6. ONLY IF REQUIRED BY STATE LAW OR BY THE EXPRESS TERMS OF THIS AGREEMENT. Snappy will indemnify and hold harmless Renter and authorized operators only, during the term of this agreement, for bodily injury and property damage claims up to the minimum dollar amounts required for any one (1) rental vehicle per occurrence, by the applicable motor vehicle financial responsibility laws of the State in which this agreement of rental was executed. The foregoing indemnification and hold harmless provision shall be applicable only to losses arising out of the authorized use of the vehicle. However, if Renter is covered by any other insurance, the indemnification and hold harmless provision of this agreement, shall be excess coverage. Notwithstanding the foregoing, the indemnification and hold harmless provision provided by Snappy herein DOES NOT provide protection to Renter for: injury or death of Renter and/or guests; any obligation under any workers compensation or other disability law; any obligation under express or implied contract; damages caused to any person by any unin-sured motorists/vehicle; medical payments required by per-sons sustaining injuries while riding, entering or leaving the car or any vehicle operated/owned by Renter or on or about Renter's premises; or while the car is outside the continental United States. Snappy has rejected uninsured motorists cover-age in States which allow for said rejection, and Renter acknowledges and joins in said rejection. Notwithstanding the foregoing, if any of the conditions, restrictions, and/or terms of said indemnification and hold harmless provision conflict

with the statues *[sic]* of the State of rental, then said indemnification and hold harmless provision is amended to conform with the statutes of the State of rental to the extent so permitted, and in the event there is absolute statutory obligation to provide uninsured motorist coverage, then Snappy will provide the minimum coverage allowed under said statute. *In addition, Renter agrees to indemnify Snappy for any loss, liability or expense arising out of the use of the vehicle which exceeds the limits of the indemnification and hold harmless provision stated above or in the event that there is no indemnification and save harmless provision, Renter agrees to indemnify Snappy for all loss, liability and expense arising out of the use of the vehicle * * ***

"9. Renter represents and warrants that Renter shall defend and hold harmless Snappy, its agents and employees, from and against any and all losses, liabilities, damages, injuries, claims, demands, costs, and expenses arising out of the use, operation and/or possession of the Vehicle during the term of this Agreement including without limitation because of enumeration, all fines, penalties and forfeitures imposed under any Federal, State or Municipal statute, law, ordinance, rule, regulation or insurance policy provision; and to the extent not covered by the indemnification and hold harmless provision in this Agreement any claims of or liabilities to third persons." (Emphasis added.)

On October 8, 1989, plaintiff was injured when the rental vehicle collided with a vehicle owned by Laura A. Sherry. At the time of the collision, the rental vehicle was being driven by plaintiff's husband, Kenneth Morris, and the Sherry vehicle was being driven by Eric Sherry, an employee of Franco's Pizzeria, who was delivering a pizza. In that collision, plaintiff sustained a fractured right femur requiring three corrective surgeries.

Plaintiff, in her January 17, 1992 complaint, named Eric Sherry, Laura Sherry, Snappy Car Rental and 864 Kenmore Avenue, Inc., doing business as Franco's Pizzeria, as defendants and alleged that her injuries were the result of Eric Sherry's and Kenneth Morris' negligence. The complaint also asserted causes of action based on vicarious liability against the remaining defendants.

In its answer dated January 28, 1992, Snappy denied the substantive allegations of plaintiff's complaint and asserted as a fourth affirmative defense that plaintiff entered into a

covenant not to sue Snappy. Additionally, in its fifth affirmative defense and as a counterclaim, Snappy asserted contractual indemnification.

Snappy thereafter moved for summary judgment dismissing plaintiff's complaint based on its counterclaim for indemnification from plaintiff, together with costs, disbursements, expenses and attorney's fees. Plaintiff cross-moved for summary judgment dismissing Snappy's counterclaim and for partial summary judgment on Snappy's liability based on Vehicle and Traffic Law § 388.

In its motion Snappy asserted that the parties' indemnification agreement required dismissal of the complaint or, in the alternative, entitled it to judgment against plaintiff for any amounts she recovered against Snappy in connection with the litigation. Snappy also asserted that, pursuant to the rental agreement, it was entitled to recover costs, disbursements and expenses, including reasonable attorney's fees, in defending the lawsuit.

In support of her cross motion for partial summary judgment based on Vehicle and Traffic Law § 388, plaintiff asserted that Kenneth Morris, the driver of the rental vehicle at the time of the accident, drove in a negligent manner; that Snappy owned the rental vehicle; that Kenneth Morris was a "permissive operator" of the rental vehicle as defined in Vehicle and Traffic Law § 388; that plaintiff sustained a "serious physical injury" as defined by the Insurance Law; and that the accident occurred on a "public highway" as defined by the Vehicle and Traffic Law.

In opposition to Snappy's motion for summary judgment, plaintiff alleged that there existed issues of fact concerning whether plaintiff must indemnify Snappy. Plaintiff alleged that when Snappy's employee delivered the rental vehicle he acted as though he was "in a hurry" and never mentioned to her that there were provisions on the reverse side. Plaintiff signed the rental agreement without reading the reverse side. Plaintiff stated that she believed she was signing a receipt for payment and that the document would serve as the car's registration.

In opposition to plaintiff's cross motion, Snappy submitted an affidavit from Hal Leader who averred that he was in the print typesetting business and that the type on the reverse side of the rental agreement was eight points in depth.

On July 23, 1992, Supreme Court denied Snappy's motion

for summary judgment dismissing the complaint; granted Snappy's motion for a conditional order of summary judgment on its counterclaim for indemnification to the extent that plaintiff recovers any damages from Snappy; granted Snappy's request for attorney's fees, expenses and costs of defending the lawsuit; and denied plaintiff's cross motion for summary judgment.

Initially, we reject plaintiff's contention that she should not be bound by the provisions on the reverse side of the lease agreement. In a prominently displayed box located immediately above plaintiff's signature, the agreement stated "I HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS ON BOTH SIDES OF THIS RENTAL AGREEMENT". By acknowledging that there were two sides to the agreement, plaintiff is bound by the terms contained therein without regard to whether she actually read them. Generally, one who signs a document without any valid excuse for having failed to read it is "conclusively bound by" its terms *(Gillman v Chase Manhattan Bank,* 73 NY2d 1, 11). "This is so because '[i]f the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him' [citation omitted]" *(Manufacturers & Traders Trust Co. v S.W.U. Assocs.,* 105 AD2d 1118, 1119; *see also, Sofio v Hughes,* 162 AD2d 518, *lv denied* 76 NY2d 712; *Manufacturers & Traders Trust Co. v Commercial Door & Hardware,* 51 AD2d 362, 366; *James Talcott, Inc. v Wilson Hosiery Co.,* 32 AD2d 524). The print employed in the lease agreement was both clear and legible and was of a size not less than the statutorily required eight points in depth *(see,* CPLR 4544). Additionally, there is no showing of fraud on Snappy's part that would preclude enforcement of the lease agreement.

Plaintiff next asserts that the indemnification provision in paragraph 6 of the rental agreement requires only that the renter indemnify Snappy in actions brought by third parties. Paragraph 6, by its terms, applies to any action brought against Snappy, whether by a renter or by a third party. The language in that paragraph does not indicate that a third-party action is a condition precedent to a renter's contractual obligation to indemnify Snappy. If, as plaintiff asserts, paragraph 6 contemplated a third-party action as a condition precedent to indemnification, the "contract itself [would have to indicate] that the parties intended the provision so to operate" (22 NY Jur 2d, Contracts, § 234). Absent that indica-

tion, the indemnification provision applies to both third-party actions and actions brought by renters. In any event, plaintiff commenced this action in her capacity as a third-party victim in an accident, and not in her capacity as a renter.

■ Having determined that plaintiff is bound by the terms of the lease agreement, we must next determine whether the indemnity agreement contained therein is, as plaintiff maintains, against public policy. We conclude that, except to the extent as hereinafter stated, it is not. There is no public policy that precludes a renter of a vehicle from agreeing to indemnify the owner for any liability for damages arising out of the use of the vehicle. Significantly, the Legislature has seen fit to prohibit certain contracts and certain indemnity provisions in contracts (see, e.g., General Obligations Law §§ 5-321, 5-322, 5-322.1, 5-324). The Legislature has also seen fit to enact extensive provisions to protect consumers regarding property damage to rental vehicles (see, General Business Law § 396-z). The law concerning contracts and indemnification agreements is long standing and well settled, and the Legislature is presumed to be aware of such law when it enacts statutes. The Legislature is deemed to have abrogated common law only to the extent that the clear import of the language of such statutes requires (see, B & F Bldg. Corp. v Liebig, 76 NY2d 689, 693). Because there are no statutory prohibitions against Snappy's indemnification provision, it must be concluded that it is permissible unless it is prohibited by the common law. There is nothing in the common law, however, that precludes such an indemnity agreement. To the contrary, the common law permits a vehicle owner/lessor to recover indemnity from a negligent user/lessee, even absent an express indemnity agreement (see, Hertz Corp. v Dahill Moving & Stor. Co., 79 AD2d 589, affd 54 NY2d 619; Elliott v Flushing Sand & Stone Co., 273 App Div 782).

Plaintiff is correct, however, in arguing that the indemnity agreement cannot deprive her of the rights extended to her as an injured party against the vehicle's owner under Vehicle and Traffic Law § 388. The Court of Appeals has stated that Vehicle and Traffic Law § 388 expresses the policy that " 'one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant' " (MVAIC v Continental Natl. Am. Group Co., 35 NY2d 260, 264; see, Continental Auto Lease Corp. v Campbell, 19 NY2d 350, 352). There is no question that Vehicle and Traffic Law § 388 applies to rental cars (see, MVAIC v Continental Natl.

*Am. Group Co., supra; see, e.g., Wynn v Middleton,* 184 AD2d 1019; *Matter of Liberty Mut. Ins. Co. v Clench,* 180 AD2d 684; *Barlow v Hertz Corp.,* 160 AD2d 580 [husband rented car and negligently caused accident injuring passenger spouse/plaintiff]).

Every vehicle owner is obligated to procure adequate liability insurance pursuant to section 388. The policy of insurance issued must encompass the insured owner's liability for his or her use of the vehicle and the use of the vehicle by another with the owner's permission *(see, Rosado v Eveready Ins. Co.,* 34 NY2d 43, 49; *Randazzo v Cunningham,* 56 AD2d 702, *affd* 43 NY2d 937). In that regard: "Vehicle and Traffic Law § 388 is part of the legislatively prescribed system for protecting innocent victims of automobile accidents by assuring that there will be a financially responsible party who is available to answer in damages *(see, Continental Auto Lease Corp. v Campbell,* 19 NY2d 350). In addition to making the owner of a vehicle vicariously liable for the negligence of anyone driving it with permission, the statute requires that all vehicle owners procure insurance to cover the liability it creates *(see,* Vehicle and Traffic Law § 388 [1], [4]). This linkage of an owner's vicarious liability to an owner's obligation to maintain adequate insurance coverage suggests that the Legislature's goal was to ensure that owners of vehicles that are subject to regulation in New York 'act responsibly' with regard to those vehicles." *(Fried v Seippel,* 80 NY2d 32, 41; *see also,* Insurance Law § 3420 [e].)

Snappy's position, that a car rental agency and its customers should be free to contract away this statutorily imposed liability, is contrary to public policy. "An agreement between two private parties, no matter how explicit, cannot change the public policy of this State" *(Public Serv. Mut. Ins. Co. v Goldfarb,* 53 NY2d 392, 400). Indeed the courts consistently have rejected attempts to narrow the application of Vehicle and Traffic Law § 388 through use of restrictive rental or lease provisions *(see, MVAIC v Continental Natl. Am. Group Co., supra; Wynn v Middleton, supra; Tom Sawyer Country Day School v Providence Wash. Ins. Co.,* 108 AD2d 810, *lv denied* 65 NY2d 608). In *MVAIC v Continental Natl. Am. Group Co. (supra,* at 264), the Court of Appeals rejected on public policy grounds Continental's reliance upon a violation of the limited use provision in a rental agreement to deny coverage to an injured party because the enforcement of the provision "could render an injured victim devoid of adequate protection, which

is contrary to the legislative intent envisaged by section 388 of the Vehicle and Traffic Law". The Court further stated that "considerations of sound public policy will prevent the evasion of the liability of one leasing cars for profit (and, in turn, his insurer) via the attempted device of restrictions on or conditions of use which run counter to the recognized realities and, in a measure, disguise the transaction" *(MVAIC v Continental Natl. Am. Group Co., supra,* at 265).

Snappy's attempt to shift the costs of plaintiff's injuries onto plaintiff herself by means of an indemnity agreement is but another effort by a rental agency to limit the application of the statute. As in the above-cited cases, Snappy's position could leave injured persons without recourse to a financially responsible defendant, which clearly violates the above-stated public policy. Snappy admits that it owned the car and that plaintiff's husband, Kenneth Morris, was a permissive operator. If plaintiff establishes that her injuries resulted from the negligence of the operator of the vehicle in which she was a passenger, she is entitled to judgment against Snappy as a matter of law.

The remaining question is what effect does the indemnification provision of the rental agreement have in light of Vehicle and Traffic Law § 388. The first sentence of paragraph 6 provides that Snappy will indemnify and hold harmless a renter to the extent required by State law. That paragraph thereafter provides that: "In addition, Renter agrees to indemnify Snappy for any loss, liability or expense arising out of the use of the vehicle *which exceeds the limits of the indemnification and hold harmless provision stated above* [i.e., the liability coverage Snappy is required to obtain pursuant to Vehicle and Traffic Law §§ 370, 388] *or in the event that there is no indemnification and save harmless provision,* Renter agrees to indemnify Snappy for *all* loss, liability and expense arising out of use of the vehicle" (emphasis added). Because Snappy is mandated to obtain liability insurance coverage pursuant to the Vehicle and Traffic Law, plaintiff is not required to fully indemnify Snappy for "all loss". Instead, in accordance with the specific language of paragraph 6, plaintiff must indemnify Snappy only to the extent that Snappy's liability exceeds its statutorily mandated liability coverage. Supreme Court erred therefore when it granted full indemnification to Snappy.

With respect to paragraph 9 of the rental agreement, we conclude that, if it were intended to be an indemnification provision, it conflicts with the express indemnification lan-

guage in paragraph 6, and should be discarded. Additionally, as previously discussed, such a clause cannot be used to deprive plaintiff of her statutory rights under the Vehicle and Traffic Law.

Finally, because plaintiff is not liable to Snappy for full indemnity, we conclude that Snappy is not entitled to recover from plaintiff its expenses, including reasonable attorney's fees.

Accordingly, the order appealed from should be modified to provide that Snappy's motion for a conditional order of summary judgment is granted in part on its counterclaim for indemnification from plaintiff to the extent Snappy may be required to pay plaintiff monies over and above those to which plaintiff is entitled pursuant to section 370 (1), (3) and section 388 of the Vehicle and Traffic Law and to deny Snappy costs and expenses including reasonable attorney's fees.

CALLAHAN, J. P. (dissenting). The majority opinion states that "Snappy's position, that a car rental agency and its customers should be free to contract away this statutorily imposed liability, is contrary to public policy." It also states that "Snappy's attempt to shift the costs of plaintiff's injuries onto plaintiff herself by means of an indemnity agreement is but another effort by a rental agency to limit the application of the statute" (see, Vehicle and Traffic Law § 388). We agree.

The majority concludes, however, that, by use of the indemnity agreement, Snappy may limit its exposure in damages to $10,000, the minimum amount required under the statute. In our view, that determination is inconsistent and condones another attempt to evade the legislative intent of the statute. Such a strained and narrow interpretation should not be upheld (see, Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818, 821). "An agreement between two private parties, no matter how explicit, cannot change the public policy of this State" (Public Serv. Mut. Ins. Co. v Goldfarb, 53 NY2d 392, 400).

Vehicle and Traffic Law § 388 (1) imposes vicarious liability on owners of motor vehicles. In pertinent part it provides that an "owner of a vehicle * * * shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle * * * by any person using or operating the same with permission, express or implied, of such owner." "In addition to making the owner of a vehicle vicariously liable for the negligence of anyone driving it with permission, the statute requires that

all vehicle owners procure insurance to cover the liability it creates *(see,* Vehicle and Traffic Law § 388 [1], [4]). This linkage of an owner's vicarious liability to an owner's obligation to maintain adequate insurance coverage suggests that the Legislature's goal was to ensure that owners of vehicles that are subject to regulation in New York 'act responsibly' with regard to those vehicles [citations omitted]" *(Fried v Seippel,* 80 NY2d 32, 41). The imposition of vicarious liability on an owner under Vehicle and Traffic Law § 388 "is part of the legislatively prescribed system for protecting innocent victims of automobile accidents by assuring that there will be a financially responsible party who is available to answer in damages *(see, Continental Auto Lease Corp. v Campbell,* 19 NY2d 350)" *(Fried v Seippel, supra,* at 41).

With respect to car rental companies, it has been observed that rental vehicles traverse New York's public highways and it therefore "is inevitable that some will become involved in their fair share of accidents" *(MVAIC v Continental Natl. Am. Group Co.,* 35 NY2d 260, 263). Thus, the Legislature "has required rental agencies to file a financial security bond as a certificate of self-insurance prior to registering their vehicles (Vehicle and Traffic Law, § 370, subds. 1, 3)" *(MVAIC v Continental Natl. Am. Group Co., supra,* at 263). Moreover, in light of the large numbers of vehicles car rental agencies rent daily to the general public for profit, those companies are not in the "same position as the private car owner who loans his car to a friend or relative for a limited purpose * * * [and] restrictions in rental agreements affect the use of a large number of vehicles" *(MVAIC v Continental Natl. Am. Group Co., supra,* at 263). Therefore, restrictions in a car rental agreement that run contrary to the legislative scheme prescribed in the Vehicle and Traffic Law can have broad implications on New York's public policy of insuring that persons injured by the negligent operation of a motor vehicle have recourse to financially responsible defendants.

New York courts have not hesitated to declare void private contractual arrangements between car rental companies and renters in the name of public policy. It has been held that provisions in car rental agreements that restrict the use of the automobile by the renter so as to escape liability to third persons on the ground that the violation of the restriction removed the element of consent required by section 388 are void as against public policy *(see, MVAIC v Continental Natl. Am. Group Co., supra; Wynn v Middleton,* 184 AD2d 1019;

*Allstate Ins. Co. v Dailey,* 47 AD2d 375, 376, *affd* 39 NY2d 759).

In this case, the rental agreement does not attempt to avoid section 388 liability by imposing restrictions on the use of the automobile; instead, through an indemnification provision, it shifts the risks of ownership from the car rental company to the renter such that the renter becomes an "owner" of the automobile. We submit that such risk shifting violates New York public policy.

The Legislature has determined that only lessees of vehicles with lease agreements extending beyond 30 days may become "owners" of the vehicle for purposes of vicarious liability under section 388 *(see,* Vehicle and Traffic Law § 128). Thus, where there exists a lease agreement of 30 days or less, the lessee may not be considered an "owner" for purposes of section 388 and the lessee should not be required to maintain liability coverage *(see, MVAIC v Continental Natl. Am. Group Co., supra,* at 265; *Simon v El Serv. Corp.,* 85 AD2d 556). Clearly, the Legislature in defining the term "owner" intended to limit the scope of vicarious liability in section 388. It did not want lessees of short-term leases to be required to provide liability coverage when they were not active tortfeasors. Thus, a provision that requires a renter to indemnify a rental company on a short-term lease runs contrary to the intent of the Legislature.

By shifting the risks of ownership from the owner to the lessee, an indemnification provision renders meaningless the requirement that car rental companies maintain adequate insurance coverage. Clearly, the legislative scheme under the Vehicle and Traffic Law envisions that rental companies bear the risk of ownership of their vehicles. Snappy should not be able to shift the risk of economic loss resulting from such ownership onto its renters while at the same time continuing to reap all of the benefits. Car rental companies must be treated in the same manner as companies transporting passengers for hire *(see,* Vehicle and Traffic Law § 370 [1]; *Matter of Allstate Ins. Co. v Shaw, supra,* at 821-822). Thus, the indemnification provision, by shifting the risks of loss of ownership from owner to renter, runs contrary to public policy and is invalid.

Accordingly, the order appealed from should be modified to deny Snappy's motion for a conditional order of summary judgment on its counterclaim for indemnification from plaintiff.

BOOMER and DAVIS, JJ., concur with LAWTON, J.; CALLAHAN, J. P., dissents in part in a separate opinion in which PINE, J., concurs.

Order modified, on the law, and as modified, affirmed, with costs to plaintiff, in accordance with the opinion by LAWTON, J.