**PROGRESSIVE INSURANCE COMPANY
(PAGO PAGO) LIMITED, Plaintiff,**

**v.**

**ESTATE OF JONATHAN TAGALOA, JEFFREY TAGALOA,
ESTATE OF FA`ATUPUTALA IONA, MR. IONA,
FA`ALOGOA`E TAGALOA, NIO SANELE FILO,
TAMALIILEUPUIA TAGOA`I, ROCKY SAFITI, and
NATIONAL PACIFIC INSURANCE as
workmen's compensation insurer, Defendants.**

High Court of American Samoa
Trial Division

CA No. 43-05

September 21, 2005

Before RICHMOND, Associate Justice; MAMEA, Associate Judge; and SAOLE, Associate Judge.

Counsel: For Plaintiff, Jeffrey Waller
For Defendants Estate of Fa`atuputala Iona and Mr. Iona, Afoa L. Su`esu`e Lutu
For Defendants Estate of Jonathan Tagaloa, Jeffrey Tagaloa, Fa`alogoa`e, Nio Sanele Filo, Tamaliileupuia Tagoa`i, and Rocky Safiti, *Pro Se*
For Defendant National Pacific Insurance, Jennifer L. Joneson

ORDER TO DEPOSIT FUNDS INTO COURT REGISTRY

## Introduction

This action arises out of a vehicle accident that occurred on Friday, January 25, 2002, in Fagasa. Allegations pertaining to the incident follow. The accident involved two vehicles, a leased 1996 Chevrolet Astro van, owned by Pago Rental Service Company ("Pago Rental") and insured by Plaintiff Progressive Insurance Company (Pago Pago) Limited ("Progressive"), and an American Samoa Telecommunications Authority ("ASTCA") maintenance truck. At around 10:30 a.m., the van was out of control and collided with the truck, which was parked on the side of the road servicing telephone lines.

Two ASTCA employees, Defendants Tamaliileupuia Tagoa`i, who was inside the truck at the time of the collision, and Nio Sanele Filo, who was thrown from the truck's boom bucket at impact, sustained injuries and were hospitalized and later released. Defendant Rocky Safiti was a passenger in the van. He was taken to the LBJ Hospital and treated for injuries sustained in the accident. Other van occupants, Defendant Fa`alogoa`e Tagaloa and her two sons, Defendant Jeffrey Tagaloa and Jonathan Tagaloa, also sustained injuries and were hospitalized. Jonathan never recovered and later died. Fa`atuputala Iona, the van's driver, was trapped inside the van after the impact. After being freed, she

was transported to LBJ Hospital where she was pronounced dead on arrival.

Pursuant to T.C.R.C.P. 22 and 57, Progressive filed a complaint for interpleader and declaratory judgment, seeking to interplead the named Defendants and have the Court determine what insurance benefits should be paid to whom. On that same date, Progressive also filed a motion to deposit $20,000 in the Court's Registry and obtain an order discharging it from further liability after making the deposit.

The deposit motion was heard on August 29, 2005. Defendants Estate of Fa`atuputala and Mr. Iona (together 'the Defendants") partially opposed Progressive's motion. They argued that Progressive is statutorily subject to liability, under A.S.C.A § 22.2003(3), up to $50,000 and should be required to deposit that amount in the Court's registry. Defendant National Pacific Insurance did not oppose the motion as presented by Progressive. The remaining Defendants, having yet to appear in this action, presented no position on the motion.

### Discussion

Resolution of the above issue turns on the Court's interpretation of A.S.C.A. § 22.2003. Section 22.2003 governs compulsory liability insurance in the territory and provides that a vehicle owner:

> (2) shall insure the person named therein and *any other person who uses the vehicle or vehicles with the express or implied permission of the named insured* against loss from liability imposed by law for damages arising out of the ownership, maintenance or use of the vehicle or vehicles, subject to limits exclusive of interest and costs, with respect to each such vehicle, as follows:
> (A) $10,000 for bodily injury to or death of one person in any one accident;
> (B) subject to said limit for one person, $20,000 for bodily injury to or death of 2 or more persons in any one accident;
> (C) $5,000 for injury to or destruction of property of others in any one accident;
> (3) shall, *if the vehicle is being used in the transportation of passengers for hire,* including taxicabs, insure the driver and all fare-paying passengers therein against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the vehicle or vehicles, subject to limits exclusive of interest and costs, with respect to each vehicle as follows:
> (A) $10,000 for bodily injury to or death of 1 person;

229

(B) $50,000 for bodily injury to or death of 2 or more persons in any one accident;

(C) $10,000 for injury to or destruction of property of others in any one accident (emphasis added).

Section 22.2003(2) holds a named insured liable for injuries caused by the named insured or any other person who uses the vehicle with the named insured's "express or implied permission." Progressive argues that § 22.2003(2) applies to the present case because all Pago Rental did was expressly permit the renter to use the van. Therefore, Progressive maintains that under subsection (2)(B), it is only required to deposit $20,000 in order to be exonerated of further liability arising out of the accident.

On the other hand, A.S.C.A § 22.2003(3) applies to vehicles "used in the transportation of passengers for hire, including taxicabs." The Defendants argue that section 22.2003(3) applies because the rental agency is a "commercial" enterprise—like the taxicab expressly mentioned in the statute—and should be interpreted to apply in all situations where a business enterprise derives a profit from the use of their vehicles. Defendants therefore maintain Progressive is required, pursuant to subsection (3)(B), to deposit $50,000 in the Court's registry before being dismissed from the action.

■ Both parties agree that the amount Progressive is required to deposit turns on the Court's assessment of whether A.S.C.A § 22.2003(3) applies to vehicle rental agencies. For the reasons set forth below, we hold that it does.

## I. Progressive's Arguments and Authorities.

Progressive reads A.S.C.A. § 22.2003 narrowly, arguing that under no hypothesis could a rental car be considered a vehicle used to transport "passengers for hire." Therefore, according to Progressive, its exposure is limited by subsection 2(B) to $20,000.

In support of this claim, Progressive cites *Dymon Cab Co. v. Branson*, 131 P.2d 1008 (Okla. 1942). Dymon Cab rented one of its taxicabs to a University of Oklahoma student who collided into the taxicab with another vehicle, injuring its driver. The injured driver sued Dymon, alleging liability was fixed by an Oklahoma statute that specifically regulated taxicabs. The statute required, among many other provisions, that "taxicabs, automobiles and other vehicles carrying passengers and baggage for hire" provide evidence of insurance or bond before a permit or a license for the taxi could be issued. *Id.* at 1008. The statute further stated that the insurance policy was in play following a collision,

"regardless of whether the taxicab was being driven by the owner, his servant, agent or lessee." After the trial judge instructed the jury that the student was a "lessee" of the cab, a jury awarded damages to the injured party. *Id.* Dymon and its insurer appealed.

The sole issue before the Oklahoma Supreme Court was whether the transaction between the student and Dymon was within the stated purpose of a statute regulating "the use of taxicabs, automobiles and other vehicles carrying passengers and baggage for hire." *Id.* at 1009. In other words, the issue was whether a statute that specifically applied to taxicabs used in the transportation of passengers for hire should apply with equal force to a taxi that had been rented to a third party.

The Oklahoma Court held that it did not. In doing so, the court looked to other state courts who had interpreted similar statutes requiring compulsory insurance or payment of special taxes for taxicabs. Those states held that under these "taxicab statutes," rental cars were not taxicabs at all because they did not "carry passengers for hire." Therefore, vehicle rental companies were not required to post the required insurance or meet the other licensure requirements listed in these taxicab specific statutes. *See, e.g., State v. Dabney*, 5 S.W.2d 304 (Ark. 1928); *Armstrong v. Denver Saunders System Co.*, 268 P. 976 (Colo. 1928). Citing these authorities, and also specifically noting that none of the statute's 21 subsections evidenced a clear intent to regulate anything other than the use of taxicabs, the Oklahoma Supreme Court reversed. *Id.* at 1010.

Progressive reads *Dymon* and the authorities cited therein as standing for the rule that a rental car is not a vehicle "carrying passengers for hire." Therefore, it urges us not to read A.S.C.A. § 22.2003(3) as applicable in the instant case. However, all *Dymon* says is that, at least in Oklahoma, a rental vehicle was not subject to the requirements of a comprehensive statute designed to regulate taxicabs.

Here, it cannot be reasonably argued that § 22.2003 was designed to specifically regulate taxicabs. Rather, our compulsory insurance statute only mentions taxicabs as an example of one type of vehicle that carries "passengers for hire." Therefore, *Dymon* and its reasoning are less than instructive in the current case.[1]

---

[1] Progressive also argues that in referring to vehicles being used in the transportation of "passengers for hire," A.S.C.A. § 22.2003(3) specifically mentions taxicabs. Progressive argues that since the statute's express language does not mention rental vehicles, then subsection (3) does not apply. In other words, because the Legislature did not expressly mention rental vehicles in subsection (3), that section must not apply to

## II. Authorities Holding that Rental Cars are Vehicles Carrying "Passengers for Hire"

Contrary to *Dymon*, other jurisdictions hold that rental car companies are subject to statutes that, like A.S.C.A. § 22.2003(3), regulate vehicles engaged in the "transportation of passengers for hire." For example, a New York statute provides that "corporations engaged in the business of carrying passengers for hire in motor vehicles (*e.g.*, buses and taxis) must demonstrate their financial responsibility by filing either a corporate surety bond or a policy of insurance with the Commissioner of Motor Vehicles." *Allstate Ins. Co. v. Shaw*, 52 N.Y.2d 818, 821 (1980). Section 370 of New York's Vehicle and Traffic Law further provides that vehicle rental corporations "shall be subject to the provisions of this section *in the same manner and to the same extent* as corporations engaged in transporting passengers for hire." *Id.* (emphasis in original). In other words, rental car agencies, like taxis and buses, are all treated as engaged in the "transportation of passengers for hire," and are subject to the same compulsory insurance or surety regulations.

Similarly, in interpreting its vehicle statutes, a Kentucky court held that rental and leasing agencies were vehicle owners "engaged in the transportation of persons or property." *Louisville Taxicab & Transfer Co. v. Blanton*, 202 S.W.2d 433 (Kentucky 1947). There, a collection of rental car agencies, including Hertz, initiated a declaratory judgment action asking the court to determine if rental agencies were subject to the requirements of a statute regulating vehicles for hire. *Id.* at 434.

The Kentucky statute required those vehicle operators "engaged in the transportation of persons or property for compensation on public highways" comport with certain regulations and pay an excise tax. The rental agencies argued, *inter alia*, that the statute could not apply because they did not drive the vehicles themselves and thus, they did not actually "*transport* passengers for hire." *Id.* at 180. In holding that rental agencies were nevertheless subject to the regulations, the court noted that the companies: 1) owned the rental vehicles, 2) engaged in the business of renting those vehicles, 3) obtained compensation, for the

rental vehicles.

On this note, it is clear from the statute that the Legislature mentioned taxicabs in subsection (3) as an example of one type of commercial business the subsection applied to. It is equally clear that subsection does not apply *exclusively* to taxicabs simply because that enterprise is the only one listed. Indeed, the express language of the statute says "including taxicabs." It is hard to imagine a scenario where the Legislature intended this language to apply exclusively to taxicabs.

transportation of persons or property, and 4) in doing so, used state highways and public roads. *Id.* Refusing to engage in a semantics debate (i.e., that the rental agency didn't literally "transport passengers"), the court held that these facts were more than sufficient to find that rental agencies engaged in the transportation of passengers for hire. *Id.* at 184.

Central to both the New York and Kentucky court's holdings that rental agencies transported passengers for hire was that rental agencies, like bus and taxi companies, are *commercial enterprises. See, e.g., Morris v. Snappy Car Rental, Inc.*, 595 N.Y.S.2d 577, 583 (1993) (holding that "in light of the large numbers of vehicles car rental agencies rent daily to the general public for profit, those companies are not in the same position as the private car owner who loans his car to a friend or relative for a limited purpose" and should not be governed by the same standards). In both states, the courts agreed that the fact that the rental agency derives a profit by putting rental vehicles on public highways makes them more analogous to a taxicab or bus company than to a friend who lends their vehicle to another.

On the whole, New York and Kentucky's positions on the issue are persuasive. There, as here, the focus should be on the similarities between the taxicab company, the bus company and the vehicle rental company (all are engaged in business of transportation for profit), and not the alleged differences that two literally transport passengers, while the other merely rents an instrument and then allows the patron to transports him or herself.

■ In arguing that A.S.C.A § 22.2003(2) applies, Progressive essentially posits that all Pago Rental did was expressly authorize the vehicle's use. In other words, Progressive likens Pago Rental to a friend who let another friend use their car. This argument is disingenuous at best. A rental vehicle company whose sole goal is to put as many vehicles as possible into the hands of strangers—thereby maximizing profits—should not be adjudged by the same standard of liability as a friend or family member lending a vehicle to the like with their "express or implied permission." Like the taxicab expressly mentioned in A.S.C.A 22.2003(3) (and, presumably a bus company), the rental vehicle business is a commercial enterprise. Markedly unlike the friend who expressly or impliedly lends his or her car to another, the rental vehicle agency, and taxicab and bus operators, all *derive a profit* from a patron's use of their vehicles.

When seen through this lens, Progressive's ancillary—and purely semantic—argument that subsection (3) cannot apply because renters are not literally "passengers" loses any thrust. This is true because the profit that flows to the bus, taxi or vehicle rental companies does so regardless

of what seat the patron is in. Whether he is in the passenger seat of a taxicab, the back seat of a bus, or the driver's seat of a rental vehicle, the respective company still gets paid.

## III. Public Policy Favors a Liberal Construction

■ A statute's sections and subsections should be read in context of the entire statute, and the legislative intent in creating the statute should always be considered. Furthermore, statutes that are enacted to provide for the safety of the general public should be liberally construed. *Tung v. Ah Sam*, 4 A.S.R. 764, 769 (1971).

■ The Legislature designed the compulsory insurance statute to justly and fairly compensate victims of negligent vehicular operations who may otherwise have little or no recourse against an at-fault driver. *See Pu`u v. Lepule*, 8 A.S.R.2d 68, 71 (1988) (holding that the "obvious design" of the compulsory insurance statute is to "facilitat[e] compensation to the hapless highway victim who is injured or has sustained damage" because of another's negligence while operating a motor vehicle. And holding further that "[t]he Act ensures some measure of economic solvency or financial responsibility of operators upon the highways to whom such innocent victims may look to for compensation. The public is thus afforded a realistic remedy against the inevitable tortious use of automobiles.")

Because of the strong public policy concerns behind the compulsory insurance scheme, interpreting § 22.2003 should not be a narrow or technical exercise. Rather, the subsections must be interpreted as a whole, giving the words "a meaning which serves rather than defeats the overall legislative goals" of justly compensating innocent victims of vehicular negligence. *See, e.g., Allstate*, 52 N.Y.2d at 822.

In this vein, it seems anomalous to hold that a vehicle rental agency is more akin to a friend or family member than it is to a bus or taxicab company. Holding that subsection (2)(B) applies to Progressive, and that Progressive is therefore only liable for $20,000, defeats rather than serves the Legislature's goal of justly and fairly compensating victims of vehicular negligence. Such a holding treats the rental agency, who puts automobiles into the hands of strangers for profit, the same as a brother who lets his sister borrow his vehicle. In the latter instance, a vehicle is lent to another out of a sense of friendship, or family duty, to someone who is, presumably, known and trusted by the other party. In the first instance, a stranger walks into a place of business, money changes hands, a vehicle is rented, and the stranger then "transports" him or herself to a desired destination. To treat these transactions as analogous, while holding the taxicab company and the bus company to a higher standard,

makes little sense. Further, such a statutory interpretation insulates vehicle rental agencies from the higher level of financial exposure faced by taxicab and buss owners, when all three commercial entities engage in what amounts to the same enterprise; to wit "the transportation of passengers for hire."

## Order

Justice and fairness to injured parties—the Legislature's intent in authoring A.S.C.A. § 22.2003—is best served by holding that commercial enterprises deriving profits from the use of their automobiles, whether taxicabs, busses or vehicle rental agencies, are all subject to the same levels of financial exposure. Progressive is required and is directed to deposit $50,000 in the Court's registry pursuant to A.S.C.A. § 22.003(3)(B). It is so ordered.