■ Lino Morales, Appellant, v D & A Food Service, Defendant, and Camillo M. Santomero, III, Respondent. [839 NYS2d 464]—

Order, Supreme Court, Bronx County (Sallie Manzanet, J.), entered on or about September 26, 2005, which, insofar as appealed from as limited by the briefs, granted the motion of defendant Camillo M. Santomero, III, for summary judgment to dismiss the Labor Law § 240 (1) claim as against him, and denied plaintiff's cross motion for summary judgment on that claim, affirmed, without costs.

Defendant Santomero, as landlord, leased the subject commercial property to defendant D & A Food Service pursuant to a written agreement which prohibited the tenant from "mak[ing] any structural alterations in interior or exterior without written consent of the Landlord," and provided that "[a]ll plans for work of any nature . . . must be subject to the Landlord's approval prior to individual contracts being awarded."

Without obtaining landlord's approval or even notifying landlord, tenant hired plaintiff to make repairs and changes to the premises. On plaintiff's last scheduled day of work, tenant supplied him with an extension ladder to enable him to reach the top of a 10-to-12-foot wall, where he drilled a hole and passed through telephone cables. As plaintiff began to descend the ladder, which was leaning against the wall and was not held by anyone, it slipped and he fell to the floor.

Landlord moved for summary judgment to dismiss, inter alia, the claim under Labor Law § 240 (1) as against him, on the ground that he was an out-of-possession owner who lacked notice or knowledge of the work performed at the site and did not supply the equipment. Plaintiff opposed the motion and cross-moved for summary judgment on the cause of action, arguing that a landlord's liability rests on the mere status of ownership, rendering control or knowledge of work irrelevant.

Because the work was performed without landlord's knowledge, and in violation of the lease requirement that tenant obtain prior consent, the landlord cannot be held liable under Labor Law § 240 (1) (see Sanatass v Consolidated Inv. Co., Inc., 38 AD3d 332 [2007]; Ahmed v Momart Discount Store, Ltd., 31

AD3d 307 [2006]). The conclusion reached in our prior decisions in *Sanatass* and *Ahmed* is compelled by *Abbatiello v Lancaster Studio Assoc.* (3 NY3d 46, 51 [2004]), in which the Court of Appeals "refuse[d] to impose absolute liability on an owner where a cable technician is injured while performing work without the owner's knowledge or consent."

In *Abbatiello*, the plaintiff cable technician was dispatched to a building in response to a complaint of a tenant who was a cable service subscriber (*see id.* at 49). The landlord neither consented to nor knew of the work, although the plaintiff's presence was authorized by Public Service Law § 228 (1), which grants cable companies mandatory access to premises. The concurrence would limit *Abbatiello* to cable workers who are present on premises solely by operation of the Public Service Law. However, the Court of Appeals expressly rejected the theory of the Second and Third Departments that "ownership alone" may determine whether an owner is liable under Labor Law § 240 (1) (*id.* at 51), and affirmed the First Department's ruling that "there could be no Labor Law § 240 (1) liability . . . because the owner did not authorize or even know of plaintiff's presence" (*id.* at 50).

The concurrence draws attention to the Court of Appeals' statements that the owner was: "powerless to determine which cable company is entitled to operate, repair or maintain the cable facilities on its property, since such decision lies with the municipality—the franchiser . . . but for Public Service Law § 228, plaintiff would be a trespasser upon [the owner's] property and [the owner] would neither owe a duty to plaintiff nor incur liability. Any permission to work on the premises was granted upon compulsion and no relationship existed between [the owner] and [the cable company] or the plaintiff" (*id.* at 52). The Court explained that in: "all cases imposing Labor Law § 240 (1) liability on an out-of-possession owner [there] is some nexus between the owner and the worker, whether by lease agreement or grant of an easement, or other property interest. Here, however, no such nexus exists. The injured plaintiff was on the owner's premises not by reason of any action of the owner but by reason of the provisions of the Public Service Law" (*id.* at 51).

The crucial factor in denying liability was not that there was a statute (the Public Service Law), but that there was no nexus with the owner and no action on the owner's part. Indeed, the Court of Appeals has "consistently 'observed that the purpose of [Labor Law § 240 (1)] is to protect workers by placing ultimate *responsibility for safety practices* on owners and

contractors instead of on workers themselves' " (*id.* at 50 [emphasis added], quoting *Panek v County of Albany*, 99 NY2d 452, 457 [2003]), "who 'are scarcely in a position to protect themselves from accident' " (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520 [1985], quoting *Koenig v Patrick Constr. Corp.*, 298 NY 313, 318 [1948]).

Labor Law § 240 (1) itself speaks in terms of an affirmative duty by owners and contractors to "furnish or erect, or cause to be furnished or erected" such safety devices as to give proper protection to a worker. In enacting the statute, the Legislature looked to owners and contractors "as the entities best able to control the workplace and provide for its safety" (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 286 [2003]). The statute imposes upon owners and contractors a responsibility to furnish a safe workplace, but does not make them insurers (*see id.* at 286, 292). The occurrence of an accident, alone, does not give rise to liability under the Labor Law, but rather there must be some breach of the owner's (or contractor's) duty; for example there is no recovery where the worker's actions are the sole proximate cause (*see id.* at 286-292).

As the Court of Appeals noted in *Abbatiello*, an owner "cannot be charged with the duty of providing the safe working conditions contemplated by Labor Law § 240 (1) for [workers] of whom it is wholly unaware" (3 NY3d at 52). Of particular importance is the fact that the Court of Appeals rejected the argument that the Public Service Law gives owners constructive notice that cable workers would periodically come upon their property (*see id.*). A general awareness that cable workers might show up at some indeterminate date does not give an owner an opportunity to see to it that a particular worker is furnished with the safety devices required for a specific task.

The concurrence draws a distinction between the owner in *Abbatiello*, which was "powerless" to determine the work performed on its premises (3 NY3d at 52), and the landlord in the instant case, who "had full control over [his] building." Landlord tried to exercise that control by requiring prior notice of any work; he would be rendered powerless if held liable notwithstanding a violation of the provision or lack of independent knowledge. As aptly noted by the concurrence, "[t]he Legislature's determination [in enacting Labor Law § 240 (1)] was based upon owners' *ability* to ensure safe working conditions, and its desire to create a strong incentive for those parties *to see that* proper precautions were taken to prevent accidents" (emphasis added).

The existence of a lease, by itself, did not create a nexus be-

tween landlord and plaintiff, because the lease did not grant the tenant the authority to undertake work without notifying the landlord.

Far from frustrating the purpose of the Labor Law, i.e., to protect workers from injury (*see Blake*, 1 NY3d at 285), upholding the lease requirement would further that goal, by giving owners the opportunity (and incentive) to see to it that the workplace is made safe. Concur—Williams, Buckley and Gonzalez, JJ.

Mazzarelli, J.P., and Sweeny, J., concur in a separate memorandum by Mazzarelli, J.P., as follows: I concur in the result reached by the majority, upon constraint of recent precedent from this Court (*Sanatass v Consolidated Inv. Co., Inc.*, 38 AD3d 332 [2007]; *Ahmed v Momart Discount Store, Ltd.*, 31 AD3d 307 [2006]). Those holdings allowed "owners," who would otherwise be liable under Labor Law § 240 (1), to avoid statutory responsibility to a person injured while engaged in covered work. This avoidance of statutory liability was accomplished by reliance on provisions in leases which required tenants to obtain the owner's express consent before allowing the work to be performed. The cited cases hold that if such permission is not obtained, then the owner may not be held liable under Labor Law § 240 (1) to third-party workers. It is my firm view that the law does not allow an owner to evade in a lease what the Legislature has deemed its nondelegable duty.

In this case, D & A Food Service leased commercial space at 1303 Leland Avenue in the Bronx from defendant Camillo Santomero, the owner of the building. Plaintiff was hired by D & A for one week to do various jobs. These included running a telephone cable through the wall of 1303 Leland Avenue into a restaurant in the adjacent building. To complete the task, plaintiff had to drill a hole through the wall about 12 feet above the ground. He did so while standing on a 20-foot extension ladder which was leaning against the wall, unsecured. Defendant D & A Food Service provided the ladder. As plaintiff completed the drilling, the ladder slid out from under him, and he fell to the floor.

Defendant Santomero moved for summary judgment to dismiss plaintiff's Labor Law §§ 200, 241 (6) and § 240 (1) claims against it. As relevant to this appeal, the IAS court dismissed the section 240 (1) claim on the ground that there was no proof that Santomero, the owner of the building, had the ability to control either plaintiff or the ladder. On appeal, plaintiff argues that the Labor Law imposes "status basis liability," and that respondent's lack of authority or control over plaintiff was not a

proper basis for dismissal of his section 240 (1) claim. Defendant Santomero counters that his mere status as an owner is insufficient to impose liability under the Scaffold Law, because plaintiff was not acting as his agent, and he did not authorize the alterations which plaintiff was conducting at the time of the accident.*

Based upon established jurisprudence prior to *Sanatass* (*supra*) and *Ahmed* (*supra*), this argument would have no basis. However, because of the recent change in the law effected by those cases, I am constrained to accept this argument.

The lack of knowledge or control by the owner has *never* before been a prerequisite for liability under section 240 (1) of the Labor Law. As discussed by the dissent in *Sanatass*, a case with strikingly similar facts, the Court of Appeals clearly rejected a knowledge or control requirement in *Gordon v Eastern Ry. Supply* (82 NY2d 555 [1993]).

In *Gordon*, the injured plaintiff was an employee of a company which cleaned trains. His employer had leased a sand house from its owner, defendant Eastern Railway Supply, Inc. (Eastern) to do the cleaning. Immediately before his accident, plaintiff was climbing onto a ladder which was leaning against one of the train cars. He was holding a sandblaster, which was used for the cleaning. Plaintiff climbed to the fourth or fifth rung of the ladder, then activated the trigger. The power forced the ladder to tip, and plaintiff fell and was injured.

In defense of a Labor Law § 240 (1) claim, Eastern, the owner of the sand house, argued that although it had leased the property to plaintiff's employer, it could not be held liable because "it neither contracted to have the work performed nor was the work performed for its benefit." (*Gordon* at 559.) The Court of Appeals declined to accept that position. It stated: "Section 240 (1) of the Labor Law, like section 241 (6), provides that *the statutory duty is nondelegable*. It does not require that the owner exercise supervision or control over the worksite before liability attaches. Although sections 240 and 241 had been construed before the 1969 amendment as requiring that an owner or general contractor actually exercise control or supervision before either could be held responsible, *when the Legislature amended the Labor Law . . . it* referred to both sections and *stated its purpose in redrafting them was to fix ultimate*

---

* Two paragraphs in a rider to this tenant's lease provide that: "Tenant will [not] make any structural alterations in interior or exterior without written consent of the Landlord" and "[a]ll plans for work of any nature, covered or not covered above must be subject to the Landlord's approval prior to individual contracts being awarded . . . ."

*responsibility for safety practices . . . where such responsibility actually belongs, on the owner and general contractor . . . . Liability rests upon the fact of ownership and whether [the Owner] had contracted for the work or benefitted from it are legally irrelevant"* (*Gordon, supra,* 82 NY2d 555, 560 [1993] [emphasis added, citations and internal quotation marks omitted]).

The Court of Appeals adhered to its holding in *Coleman v City of New York* (91 NY2d 821 [1997]). There, the plaintiff was a structure maintainer for the New York City Transit Authority (NYCTA). He was injured while doing repair work, after falling through a canopy attached to an elevated train station owned by the City of New York. The Court of Appeals rejected the City's argument that, although technically an owner of the property, it could not be held liable because of the unique statutory scheme creating the NYCTA and establishing the lessor-lessee relationship (*id.* at 823). The Court affirmed its rule that the Labor Law imposes strict liability upon all fee owners. It noted that while the Legislature had explicitly exempted the owners of one- and two-family dwellings, no similar exception had been crafted for the City (*id.*).

The only departure from this rule has been *Abbatiello v Lancaster Studio Assoc.* (3 NY3d 46 [2004]). There the Court of Appeals addressed the liability of the owner of a residential apartment building, under Labor Law § 240 (1), for injuries sustained by a cable television technician. The technician was performing repairs to a cable box on the side of the building without the owner's knowledge or consent. He was present on the premises under the mandate of Public Service Law § 228. The Court of Appeals determined that this owner of the building was not statutorily liable for that workman's injuries. Its holding was premised upon the absence of any: "nexus between the owner and the worker, whether by a lease agreement or grant of an easement, or other property interest. . . . The injured plaintiff was on the owner's premises not by reason of any action of the owner but by reason of provisions of the Public Service Law" (*id.* at 51). The Court noted that but for Public Service Law § 228 (1), which grants cable companies mandatory access to buildings for purposes of installing and servicing cable television facilities, "plaintiff would [have been] a trespasser upon [the owner's] property and [the owner] would neither owe a duty to plaintiff nor incur liability. Any permission to work on the premises was granted upon compulsion and no relationship existed between [the owner] and [the cable company] or plaintiff" (*id.* at 52).

Unlike the plaintiff in *Abbatiello*, the plaintiff here was not a

trespasser. And, unlike the owner in *Abbatiello*, Santomero, the owner here, was not "legally 'powerless' to determine what work was performed on the premises" (*Sanatass*, *supra*, 38 AD3d at 334). By contrast, Santomero had full control over his building and responsibility for the acts of his tenants.

In choosing the language of Labor Law § 240 (1), the Legislature made specific policy determinations. It decided, when enacting section 240 (1) of this remedial statute, to enumerate and define "contractors and owners and their agents." It also decided that these parties would be held strictly liable for injuries suffered while workers were engaging in activities covered by the statute, such as the work plaintiff was instructed to do here (*see Joblon v Solow*, 91 NY2d 457, 465 [1998]; *Weininger v Hagedorn & Co.*, 91 NY2d 958 [1998]; *Enge v Ontario County Airport Mgt. Co., LLC*, 26 AD3d 896 [2006]). The Legislature's determination was based upon owners' ability to ensure safe working conditions, and its desire to create a strong incentive for those parties to see that proper precautions were taken to prevent accidents.

The holding in this case clearly frustrates the public policy of the State as expressed by the Legislature. To allow Santomero, the owner of the building where plaintiff was hurt, to contract away his liability flies in the face of settled principles of law (*Morris v Snappy Car Rental*, 189 AD2d 115, 122 [1993], *affd* 84 NY2d 21 [1994] [car rental agency precluded from disclaiming statutory liability by contract]). "An agreement between two private parties, no matter how explicit, cannot change the public policy of this State" (*Public Serv. Mut. Ins. Co. v Goldfarb*, 53 NY2d 392, 400 [1981]).

