MANUFACTURERS AND TRADERS TRUST COMPANY, Respondent, v COMMERCIAL DOOR & HARDWARE, INC., et al., Defendants, and FRANCES M. PALUCH, Appellant.

Fourth Department, April 2, 1976

*Towne, Rubenstein & Snyder (Clarence Snyder* of counsel), for appellant.

. *Hodgson, Russ, Andrews, Woods & Goodyear (Richard Goetz* of counsel), for respondent.

WITMER, J. Defendant Frances M. Paluch appeals from an order at Special Term denying her motion to vacate a judgment (CPLR 5015, subd [a], par 1) entered against her on November 9, 1973 upon her failure to answer the complaint in an action instituted in August, 1973 upon promissory notes, the payment of which she had guaranteed. It appears that although defendant made no formal appearance in the action, she was represented by an attorney who sought and obtained an oral extension of time to answer. After that time expired, plaintiff's attorney wrote to appellant's attorney and advised that unless answer was received or a proposal of payment was made by November 9, 1973, judgment by default would be entered. On receiving no response to that letter, on November 9 the judgment was entered, in the sum of $30,546.68. The record shows that defendant knew of the entry of the judgment and discussed it with her son, a codefendant; but she took no action with respect thereto.

It appears that defendant Commercial Door & Hardware, Inc. (Commercial) had opened a checking account with plaintiff bank in 1971, and defendant's son, Bronislaus, as president of the corporation, and defendant, as secretary-treasurer thereof, signed the signature cards for the account. Bronislaus represented to plaintiff that he owned residence property at

78 Benton Street, Dunkirk, New York. Commercial borrowed various sums of money from plaintiff in 1972. There came a time when plaintiff learned that the residence property was owned by defendant-appellant, and plaintiff declined to make further loans to Commercial without a guarantee of Commercial's loans by her. Bronislaus assured plaintiff that his mother would guarantee the loans, and he arranged to have a representative of plaintiff come to Commercial's office for such purpose. On January 22, 1973 such representative, Louis A. Wyszynski, with an assistant, went to Commercial's office and met defendant-appellant who signed the necessary guarantee. Thereupon plaintiff advanced further loans to Commercial. On making one of such loans plaintiff requested financial statements from Commercial and its officers, and on February 13, 1973 defendant-appellant supplied her financial statement to plaintiff, showing her ownership of the residence property.

Four months later Commercial defaulted in payment of interest on its loans. A month thereafter appellant's then attorney wrote to plaintiff and asked for a copy "of the paper that you had her [appellant] sign in the office of Commercial Door & Hardware, Inc." Shortly thereafter a deed of the residence property from appellant to her two daughters, apparently given without consideration, was recorded.

It was in the month after this occurred that plaintiff instituted the action on the notes and guarantee. When more than six weeks passed after entry of the default judgment, without response from defendant-appellant, plaintiff instituted, on December 26, 1973, action against her and her two daughters to set aside as fraudulent the conveyance of the residence property. Defendant-appellant responded by the motion at Special Term to vacate the default judgment. Special Term denied the motion on two grounds, first, that the default was not excusable and second, that defendant had no meritorious defense to the action.

Defendant-appellant contends that she did not know that the paper which she signed on January 22, 1973 was a guarantee of payment of Commercial's loans; that she signed it, "to stop the continued loans [to Commercial] and [she] felt this was a proper way of accomplishing this goal", and she "signed the paper without reading it or taking it to an attorney". She adds that she did not see the title of the paper, "nor were the contents read [to her] or explained to" her; and

that not until a week or so after she deeded her residence to her daughters did she learn that she had signed a guarantee.

In her proposed answer appellant essentially repeats the above contentions and adds that plaintiff "indicated that no more [loans] would be made to Bronislaus A. Paluch without [her] consent and signature"; that she signed "the paper" on such representation, not having "the opportunity to examine the same"; "that if she had been shown the instrument and had the instrument explained to her with its legal significance she would never have signed the same"; and that she signed it "by means of misrepresentation, non-disclosure, mistake and fraud".

The law favors disposition of causes on their merits and that an inadvertent default should be opened to allow trial of a meritorious defense (Rawson v Austin, 49 AD2d 803; Le Cesse v Giancursio, 38 AD2d 873; Michaud v Loblaws, Inc., 36 AD2d 1013; Ballard v Billings & Spencer Co., 36 AD2d 71; Matter of Mento, 33 AD2d 650).

Defendant-appellant's papers give no substance to her assertion that plaintiff's misrepresentation to her led her to sign the guarantee without knowing its purpose. As plaintiff states, "if any misrepresentation was made by her son, the plaintiff is not to blame and she is obligated pursuant to the written terms of the agreement".

Defendant was secretary-treasurer of Commercial, had signed its signature cards, and does not appear to be as ignorant as she professes on this application. The inquiry that her attorney made, for a copy of the guarantee, a month after Commercial's default, and her prompt conveyance of her residence to her daughters without consideration indicate that she understood the matter very well. The fact that upon request she had given a financial statement to plaintiff underscores the point.

When plaintiff thereafter brought suit on the notes and guarantee, appellant consulted with her attorney and, presumably feeling secure in the conveyance to her daughters, deliberately defaulted in answering in that action. After the judgment was entered, she discussed it with her son and yet took no action to vacate it for the purpose of defending the action on the merits. It was not until plaintiff instituted the action to set aside the conveyance of the residence to her daughters on the ground of fraud upon creditors, that appellant moved to vacate the default judgment and defend the action. We agree

with Special Term that the default was inexcusable. We also agree that defendant has not shown a meritorious defense.

A competent person is held responsible for his signature to a document which has not been fraudulently procured. He is bound to read and know what he signs *(Humble Oil & Refining Co. v Jaybert Esso Serv. Station,* 30 AD2d 952). In *Pimpinello v Swift & Co.* (253 NY 159, 162-163) the court said, "Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. (Wigmore on Evidence, § 2415.) If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him." Further, there is no merit to appellant's claim of fraudulent inducement of her signature. The plaintiff bank had no duty to act as her attorney and give her advice, and she has given no substance to her claim of concealment or misrepresentation *(State Bank of Albany v McDonnell,* 40 AD2d 905). The proposed defense is sham and affords no basis for opening the judgment *(Murphy v Hall,* 24 AD2d 892).

The order denying the motion to vacate the judgment should, therefore, be affirmed.

MOULE, J.P., CARDAMONE, SIMONS and DILLON, JJ., concur.

Order unanimously affirmed, with costs.