**MATTHEWS AND FIELDS LUMBER CO., INC., Plaintiff,**

v.

**NEW ENGLAND INSURANCE COMPANY, Defendant.**

No. 99–CV–6314L.

United States District Court,
W.D. New York.

Sept. 26, 2000.

George DesMarteau, DesMarteau & Beale, Rochester, MN, for Matthews and Fields Lumber Co., Inc., plaintiffs.

Patrick J. Solomon, Nixon, Peabody LLP, Rochester, MN, for New England Insurance Company, defendants.

## *DECISION AND ORDER*

LARIMER, Chief Judge.

The complaint in this action was originally filed in New York State Supreme Court, Monroe County, in May 1998. The complaint alleges that defendant, New England Insurance Company ("New England") breached certain duties that it owed to plaintiff, Matthews and Fields Lumber

Co., Inc. (sometimes "M & F"), with respect to defendant's amendment of a defined benefit plan ("the Plan") that M & F had adopted for its employees. Defendant removed the action to this court in July 1999, on the ground that plaintiff's claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.* Defendant has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

The complaint alleges that in 1968, M & F adopted a retirement benefit plan for its employees. M & F purchased the Plan from New England, which had drafted it. Although M & F was the Plan administrator, New England did provide certain services to M & F with respect to the Plan's administration, including calculation of employee benefits.

Plan benefits were calculated based on employees' compensation. In 1982, M & F modified its compensation structure for certain salespersons to provide for a salary plus commissions.[1] The Plan provided that commissions would be excluded from benefit calculations, however.

In 1984, M & F, upon defendant's recommendation, executed a restatement of the Plan in order to remain in compliance with certain statutory changes. New England prepared the restatement, and on June 25, 1987,[2] Scott Fields, M & F's Secretary and Treasurer, signed the restatement on behalf of M & F. The signature page stated, *inter alia,* that M & F "ha[d] received, read, accept[ed] and incorporate[ed] by reference" the restated Plan. *See* Affidavit of Stephen Chiumenti, Esq. (Docket Item 6) Ex. A. It further stated, "It is understood that [New England] shall not be responsible for the tax and legal

aspects of the Plan and Trust, full responsibility for which is assumed by [M & F], which hereby acknowledges that it has consulted legal and tax counsel to the extent considered necessary." *Id.*

Unlike the original Plan, the restatement contained a provision stating that commissions *would* be included in benefit calculations. Plaintiff alleges that, despite the statement that M & F had read and accepted the restated Plan, in fact neither Fields nor anyone else from M & F had read the restated Plan when Fields signed it. M & F alleges that it was unaware that the restated Plan provided that commissions were to be included, and that M & F, relying on defendant's representations that no substantive changes had been made to the terms of the original Plan, simply assumed that commissions remained excluded as before.

In May 1996, M & F decided to terminate the Plan, resulting in lump-sum distributions of accrued benefits to the covered employees. The distributions, however, allegedly came up some $62,000 short of the amount to which the employees were entitled. At this stage of the proceedings, it is not entirely clear why that occurred, but it appears that plaintiff alleges that the shortfall was related to the fact that the Plan as restated called for the inclusion of commissions in calculating benefits. At any rate, M & F eventually made up the shortfall out of its own funds by paying its employees the additional amounts owed. M & F also alleges that it incurred other expenses due to this error because it was forced to reprocess the termination of the Plan in order to comply with Internal Revenue Service requirements.

The complaint asserts two causes of action. The first alleges that New England

---

1. The complaint does not state how these employees were compensated prior to 1982.

2. Although the complaint alleges that the restatement was executed in 1984, it appears that it was actually executed in 1987, but that it was made retroactively effective as of May 20, 1984. *See* Affidavit of Stephen Chiumenti, Esq. (Docket Item 6) Ex. A.

breached its agreement with M & F to provide expert services in regard to the adoption and administration of the Plan. Although this cause of action does not expressly articulate any particular legal theory, it is in essence a claim for professional malpractice. The second cause of action alleges negligence by defendant in its calculation of benefits and a breach of defendant's duty of due care. M & F alleges that it has been damaged in the amount of $95,000.

## DISCUSSION

Defendant asserts two grounds in support of its motion to dismiss. First, defendant alleges that plaintiff's claims are preempted by ERISA, and that because M & F has not asserted an ERISA claim, the complaint must be dismissed.

Second, defendant contends that M & F's claims are time-barred. Citing 29 U.S.C. § 1113, defendant states that the limitations period for a breach of fiduciary duty claim is six years after the last act that constituted part of the breach, or three years after the earliest date on which the plaintiff either had actual knowledge of the breach, or on which a report from which the plaintiff could reasonably be expected to have obtained knowledge of the breach was filed with the Secretary of Labor, whichever period ends first. Here, defendant states, the last act that was part of the alleged breach could have occurred no later than 1987, when Scott Fields signed the restated Plan on M & F's behalf. According to defendant, then, the limitations period ended in 1993 at the latest, well before the complaint was filed in 1998.

Defendant also asserts that even if plaintiff's claims are not preempted by ERISA, they are time-barred under New York law, which provides limitations periods of six years for breach of contract, and three years for negligence and breach of the duty of due care. Again, according to defendant, the last date on which those periods could have commenced was 1987.

M & F denies that its claims are preempted by ERISA. M & F contends that it is not asserting a claim for benefits or for equitable relief under ERISA, but simply a straightforward common-law claim for damages based on defendant's alleged negligence and professional malpractice.

M & F also states that whether or not its claims are preempted by ERISA, they are not time-barred. M & F alleges that it did not have actual knowledge of the breach until May 1996, when the shortfall in benefits was discovered, less than three years before the complaint was filed. M & F further states that if its claims are treated as state law claims, the limitations period was also tolled under the doctrine of continuous representation, which is derived from the "continuous-treatment" doctrine applied to medical malpractice claims; see N.Y. C.P.L.R. § 214–a.[3]

At oral argument on defendant's motion on June 13, 2000, the court inquired of counsel whether, even if the court did not find plaintiff's claims to be preempted by ERISA, the court would nonetheless have jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Counsel for both parties agreed that diversity jurisdiction does exist here, since M & F is a New York corporation and New England is a foreign corporation, and the jurisdictional amount has been met. The parties also agreed that if the limitations period commenced upon the execution of the restated Plan in 1987, plaintiff's claims would be time-barred under both ERISA and New York law. In a supplemental letter brief submitted at the court's request, de-

**3.** § 214–a Action for medical, dental or podiatric malpractice to be commenced within two years and six months; exceptions

An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure . . . .

fendant also requests the court to exercise its diversity jurisdiction and dismiss plaintiff's claims on the ground that they are time-barred, thus making it unnecessary to reach the preemption issue.

■ After reviewing the pleadings, the Plan itself,[4] and relevant case authority, I agree with defendant that regardless of whether M & F's claims are preempted by ERISA, they are time-barred, because the limitations period commenced on June 25, 1987, when Fields signed the restated Plan on behalf of M & F. The law in New York is clear that absent certain exceptional circumstances that are not alleged here, parties are bound by his signature, and cannot be heard to complain that they did not read a document before signing it.

For example, in *Pressley v. Rochester City Sch. Dist.*, 234 A.D.2d 998, 652 N.Y.S.2d 191 (4th Dep't 1996), the court, affirming the dismissal of the complaint in a tort action arising out of an automobile accident, held that a release signed by the plaintiff was valid and enforceable, notwithstanding the plaintiff's assertion that she had not read the release before executing it. In doing so, the court stated that a "party is under an obligation to read a document before executing it and cannot avoid its effect by asserting that he or she did not read it or know its contents." *Id.* at 999, 652 N.Y.S.2d 191. There is ample authority in other cases expressing the same rule. *See, e.g., Friedman v. Fife*, 262 A.D.2d 167, 168, 692 N.Y.S.2d 61 (1st Dep't 1999) ("Plaintiff will not be heard to claim that he received only a signature page for the stock restriction agreement, since he was bound to know and read what he signed"; affirming order granting motion to dismiss) (citing *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 11, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988)); *Blog v. Battery Park City Auth.*, 234 A.D.2d 99, 100, 650 N.Y.S.2d 713 (1st Dep't

1996) ("As a general matter, a party will not be excused from reading a document that he or she has signed"); *Worcester Ins. Co. v. Hempstead Farms Fruit Corp.*, 220 A.D.2d 659, 660, 633 N.Y.S.2d 66 (2d Dep't 1995) ("A party who enters into a written contract is bound by its stipulations and conditions whether or not he or she reads the contract"). In fact, courts have gone so far as to term a party's signing a document without having read it first "gross negligence." *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162, 170 N.E. 530 (1930) (quoted in *Manufacturers and Traders Trust Co. v. Commercial Door & Hardware, Inc.*, 51 A.D.2d 362, 366, 381 N.Y.S.2d 709 (4th Dep't 1976)).

I recognize that there is an exception to this rule where a party's signature has been procured through fraud or other misconduct. *Koncelik v. Abady*, 179 A.D.2d 942, 944, 578 N.Y.S.2d 717 (3d Dep't 1992). However, there is no allegation that anything of the kind occurred here. The complaint simply alleges that defendant represented to plaintiff "that the substantive provisions of the Plan were not being altered by the Restatement." Complaint ¶ 15. There is no allegation, however, that New England made any specific representations regarding the inclusion or exclusion of commissions in calculating compensation, and in fact a quick perusal of the restated Plan would have revealed that commissions were included. Section 1.06 of the Plan states, in part:

"Annual Compensation"

\* \* \* \* \* \*

B. Shall not include (select if appropriate):

X 1. Overtime pay

— 2. Commissions

X 3. Bonuses and other extra pay

Chiumenti Aff. Ex. A. Thus, "overtime pay" and "bonuses and other extra pay"

---

4. Because the complaint incorporates the Plan by reference, the court may consider it on a motion to dismiss. *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir.1998); *Walsh v. Eastman Kodak Co.*, 53 F.Supp.2d 569, 570 (W.D.N.Y.1999).

are plainly excluded from the definition of compensation, while "commissions" are just as plainly included. Again, plaintiff's allegations do not indicate that New England misled M & F at all with respect to this provision, and M & F is accordingly bound by Fields's signature. *See Matter of Estate of Schuellain,* 269 A.D.2d 864, 703 N.Y.S.2d 795 (4th Dep't 2000) (upholding validity of waiver of right of election where petitioner failed to present proof that he had been fraudulently induced to sign waiver); *Kypreos v. Spiridellis,* 124 A.D.2d 786, 787–88 (2d Dep't 1986) (rejecting defendant's argument that contract was not enforceable because he had not read it prior to signing it, since defendant's allegations showed no fraud·on plaintiffs' part).

Moreover, it is plain from plaintiff's own allegations that M & F knew that there were *some* changes being made to the Plan, and that the reason for the changes was to comply with certain laws, which should have put M & F on notice that the changes were not purely trivial. To have signed the Plan in awareness of that fact, but without reading the Plan first, was simply negligence on M & F's part. *In Matter of Estate of Garbade,* 221 A.D.2d 844, 846, 633 N.Y.S.2d 878 (3d Dep't 1995) ("In our view, respondent has established nothing more than her own dereliction in failing to acquaint herself with the provisions of the agreement and to obtain the benefit of independent legal counsel"), *leave to appeal denied,* 88 N.Y.2d 803, 645 N.Y.S.2d 446, 668 N.E.2d 417 (1996).

In addition, the Plan itself states, on the same page where Fields signed it, that M & F had read and accepted the Plan, and had obtained whatever legal and tax advice it considered necessary. To allow M & F to avoid being bound by Fields's signature based on its allegation that Fields had not in fact read the plan and that New England had represented that it contained no substantive changes would violate the rule against using parol evidence to contradict the unambiguous terms of a contract. *See,*

*e.g., Chimart Assoc. v. Paul,* 66 N.Y.2d 570, 572–3, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986); *Leumi–Fin. Corp. v. Richter,* 17 N.Y.2d 166, 173, 269 N.Y.S.2d 409, 216 N.E.2d 579 (1966).

A further problem with M & F's argument is that to adopt its position would create an exception that would swallow the rule. It would be a rare circumstance when two parties enter into a contract, or sign some other document, without there having been *some* discussion between them about the nature and contents of the document. That does not mean, however, that one party is entitled to assume that the other party has told him everything that he would like, or need, to know about its contents. *See Manufacturers and Traders Trust,* 51 A.D.2d at 366, 381 N.Y.S.2d 709 ("The plaintiff bank had no duty to act as [plaintiff's] attorney and give her advice" before plaintiff signed loan guarantee). The whole purpose of the rule that persons are presumed to have read what they have signed is to avoid such a result. That purpose would be completely frustrated if one person's mere failure to mention some clause or language in a contract rendered the other's signature nonbinding.

It should also be noted that the parties here were not in an unequal position. M & F is not a layperson dealing in matters outside his field of knowledge or with which he has no experience. Rather, these were sophisticated companies dealing at arm's length, and having administered the Plan for years, M & F presumably had some knowledge of how the Plan operated. By signing the Plan without reading it first, M & F simply took a risk, unwisely as it turns out.

■ I am also not persuaded by M & F's argument that the limitations period is subject to tolling under the continuous-representation doctrine. Although that rule has been extended by the courts from medical malpractice cases to malpractice cases against other professionals such as attorneys, architects and accountants, *see Triangle Underwriters, Inc. v. Honeywell,*

*Inc.,* 604 F.2d 737, 744 n. 14 (2d Cir.1979) (collecting cases), what little authority exists from New York courts suggests that New York courts would not apply the doctrine to insurance companies, particularly in circumstances such as those that exist here. *See National Life Ins. Co. v. Frank B. Hall & Co. of New York, Inc.,* 67 N.Y.2d 1021, 1023–24, 503 N.Y.S.2d 318, 494 N.E.2d 449 (1986) (finding no basis for application of continuous-treatment doctrine to action against insurance broker for malpractice, on grounds that the case did not involve uninterrupted course of reliance and services related to particular duty breached, and that policy considerations underlying adoption of discovery rule for foreign or implanted objects did not call for application of the rule to the case); *Video Corp. of America v. Frederick Flatto Associates, Inc.,* 85 A.D.2d 448, 456, 448 N.Y.S.2d 498 (1st Dep't 1982) (finding that doctrine did not apply to suit for negligence and breach of contract against insurance broker, since, "[u]nlike a recipient of the services of a doctor, attorney or architect, as to whom the doctrine has been applied, the recipient of the services of an insurance broker is not at a substantial disadvantage to question the actions of the provider of services"), *modified on other grounds,* 58 N.Y.2d 1026, 462 N.Y.S.2d 439, 448 N.E.2d 1350 (1983); *Flora's Card Shop Inc. v. Paul Krantz & Co.,* 111 Misc.2d 907, 908–09, 445 N.Y.S.2d 392 (New York County 1981) (declining to apply doctrine to insurance broker in action for negligence and malpractice), *aff'd,* 91 A.D.2d 938, 458 N.Y.S.2d 880 (1st Dep't 1983); *see also Port Auth. of New York and New Jersey v. Evergreen Int'l Aviation,* 179 Misc.2d 674, 678–79, 686 N.Y.S.2d 269 (Queens County 1999) (holding that insurance agents and brokers are not "professionals" within meaning of malpractice statute); *but see Ben Heller, Inc. v. St. Paul Fire & Marine Ins. Co.,* 107 Misc.2d 687, 688, 435 N.Y.S.2d 669 (New York County 1981) (extending doctrine to insurance brokers to malpractice claim by codefendant insurance companies based on brokers' failure to timely notify insurance companies of losses claimed by plaintiffs). One district court within this circuit has refused to apply the rule to and insurance broker; *see T & N plc v. Fred S. James & Co. of New York, Inc.,* No. 89 Civ. 7688, 1993 WL 17336 *6 (S.D.N.Y. Jan.21, 1993), *aff'd,* 29 F.3d 57 (2d Cir.1994). In affirming, the Second Circuit, noting the *Ben Heller* court's application of the rule to insurance brokers, held that even if the doctrine did apply to insurance brokers, it was not applicable based on the facts presented in *T & N* because the essence of the plaintiff's claims was simply that the defendant had breached its duty to obtain adequate insurance coverage, and the record did not suggest that the defendant was under a continuing duty to assure that the plaintiff's coverage was satisfactory. 29 F.3d at 60.

In the absence of any clear authority from New York courts that the continuous-representation or treatment doctrine should be applied to insurance companies in circumstances like those in the case at bar, this court is not prepared to make such a ruling itself. Accordingly, I find that the doctrine is not available to toll the statute of limitations in this case. *See Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 406 (5th Cir.1986) (duty of federal court sitting in diversity is to apply state law as it exists, not to set new precedents), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Trans World Metals, Inc. v. Southwire Co.,* 769 F.2d 902, 908 (2d Cir.1985) ("As a federal court sitting in diversity, we will not extend the application of this state law").

## CONCLUSION

Defendant's motion to dismiss the complaint (Docket Item 5) is granted, and the complaint is dismissed.

IT IS SO ORDERED.