1125 Morris Ave. Realty LLC v Title Issues Agency LLC (2023 NY Slip Op 51345(U))

[*1]

1125 Morris Ave. Realty LLC v Title Issues Agency LLC

2023 NY Slip Op 51345(U)

Decided on December 12, 2023

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 12, 2023
Supreme Court, Bronx County

1125 Morris Avenue Realty LLC, Plaintiff(s),

against
Title Issues Agency LLC, MARTIN E. KOFMAN, STEVEN LOWENTHAL, ESQ., and LOWENTHAL PC, "JOHN DOE," "JANE DOE," "ABC CORPORATION," AND "XYZ CORPORATION," Defendant(s).

Index No. 809156/23E

Counsel for plaintiff: Law Office of Jan V Farensbach
Counsel for defendants: Rosenberg & Steinmetz PC

Fidel E. Gomez, J.

In this action for, inter alia, breach of contract, defendants TITLE ISSUES AGENCY LLC (TIA), MARTIN E. KOFMAN (Kofman), STEVEN LOWENTHAL, ESQ. (Lowenthal), and LOWENTHAL PC (LP) move inter alia, pursuant to CPLR § 3211(a)(1) for an order dismissing plaintiff's complaint. Saliently, movants contend that the instant action is barred by a release executed by plaintiff, such that the complaint must be dismissed. Plaintiff opposes the instant motion, but only to the extent that movants seek to dismiss its third cause of action for fraud [FN1]
. With respect to its cause of action for fraud, plaintiff avers that such claim is timely since it was commenced within two years of the discovery of the fraud alleged. 
For the reasons that follow hereinafter, TIA, Kofman, Lowenthal, and LP's motion is granted.
The instant action is for breach of contract, unjust enrichment, fraud, and conversion. The complaint, filed on June 13, 2023, alleges the following. On November 5, 2014, plaintiff, owner of premises located at 1125 Morris Avenue, Bronx, NY (1125), borrowed $288,000 from nonparty [*2]Pensco Trust Co. Custodian FBO Alex Shruis (Pensco). Kofman and Lowenthal of the now defunct firm of Lowenthal & Kofman, PC, were the attorneys for Pensco, and TIA was the title company for the same. On November 6, 2014, Kofman sent plaintiff a letter, apprising it that for purposes of settling tax, water, and sewer charges for 1125, he sent TIA a check from the loan proceeds totaling $248,000. TIA was to effectuate the foregoing settlement by satisfying any of the foregoing charges owed. In August 2022, after conferring with counsel, plaintiff discovered that TIA had failed to pay the outstanding tax, water and sewer charges for 1125, and at best, it had only partially paid the same. As a result, plaintiff was required to obtain two additional loans in order to satisfy the foregoing charges, the second of which fully satisfied the foregoing charges. Based on the foregoing, plaintiff interposes four causes of action. The first cause of action against TIA, Kofman, Lowenthal, and LP [FN2]
is for breach of contract, wherein it is alleged that despite assurances, the foregoing defendants failed to use the proceeds of the loan to satisfy outstanding tax, water and sewer liens. The second cause of action against TIA, Kofman, Lowenthal, and LP is for unjust enrichment and premised on the same allegations asserted in connection with the first cause of action. The third cause of action is against TIA, Kofman, Lowenthal, and LP and is for fraud wherein plaintiff alleges that defendants schemed and conspired to defraud it by keeping loan proceeds. The fourth cause of action against TIA, Kofman, Lowenthal, and LP is for conversion and premised on the same allegations asserted in the first and second causes of action.
 Motion to Dismiss
TIA, Kofman, Lowenthal [FN3]
, and LP's motion seeking dismissal of the third cause of action for fraud is granted. Significantly, here, the documentary evidence submitted by movants conclusively establishes that the instant action is barred. 
Pursuant to CPLR § 3211(a)(1), a pre-answer motion for dismissal based upon documentary evidence should only be granted when "the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]; Leon v Martinez, 84 NY2d 83, 88 [1994]; IMO Industries, Inc. v Anderson Kill & Olick, P.C., 267 AD2d 10, 10 [1st Dept 1999]). Much like on a motion pursuant to CPLR § 3211(a)(7), on a motion to dismiss pursuant to CPLR § 3211(a)(1), the allegations in plaintiff's complaint are accepted as true, constructed liberally and given every favorable inference [*3](Arnav Industries, Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, L.L.P., 96 NY2d 300, 303 [2001], overruled on other grounds by Oakes v Patel, 20 NY3d 633 [2013]; Hopkinson III v Redwing Construction Company, 301 AD2d 837, 837-838 [3d Dept 2003]; Fern v International Business Machines Corporation, 204 AD2d 907, 908-909 [3d Dept 1994]).
Affidavits are not documentary evidence for purposes of establishing relief under CPLR § 3211(a)(1) (Fleming v Kamden Properties, LLC, 41 AD3d 781, 781 [2d Dept 2007][Here, the appellants' submissions in support of their motion included an affidavit and a verified Surrogate's Court petition which the Supreme Court properly declined to consider on a motion to dismiss pursuant to CPLR 3211 (a)(1) because the submissions did not constitute documentary evidence."]; Berger v Temple Beth-El of Great Neck, 303 AD2d 346, 347 [2d Dept 2003]).
Significantly, documentary evidence means judicial records, judgments, orders, contracts, deeds, wills, mortgages and "a paper whose content is essentially undeniable and which, assuming the verity of its contents and the validity of its execution, will itself support the ground upon which the motion is based" (Webster Estate of Webster v State of New York, 2003 WL 728780, at *1 [Ct Cl Jan. 30, 2003]).
In support of the instant motion, and to the extent relevant, TIA, Kofman, Lowenthal, and LP submit a release. The release was notarized on July 3, 2016 and executed by nonparty Orlando Sewell (Sewell), on behalf of plaintiff. The release states
[t]o All To Whom These Presents Shall Come Or May Concern, Know That 1125 MORRIS AVENUE REALTY LLC, a Limited Liability Company organized under the laws of the State of New York, AND ORLANDO SEWELL, individually, as RELEASORS, in consideration of the sum of EIGHTY THOUSAND THREE HUNDRED SIXTY THREE and NINETY CENTS ($80,363.90), received from TITLE ISSUES AGENCY LLC, as RELEASEE, receipt whereof is hereby acknowledged, releases and discharges TITLE ISSUES AGENCY LLC, ALEX SHURIS, LOWENTHAL & KOFMAN, P.C., MARTIN E. KOFMAN AND RAINBOW DEVELOPMENT LLC, the RELEASEES, RELEASEES' heirs, executors, administrators, successors, and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, Judgements, extents, executions, claims and demands whatsoever, in law, admiralty or equity, which against the RELEASEES, the RELEASORS, RELEASORS' heirs, executors, administrators, successors and assigns ever had, now have or hereinafter can, shall or may, have for, upon, or by reason of any matter, cause or things whatsoever from the beginning of the world to the day of the date of this RELEASE.
TIA, Kofman, Lowenthal, and LP also submit a mortgage between plaintiff and Pensco, dated November 5, 2014. The mortgage evinces that Pensco and nonparty Rainbow Development LLC loaned plaintiff $288,000 and that to secure the loan, plaintiff pledged 1125 as security. 
TIA, Kofman, Lowenthal, and LP also submit a mortgage between plaintiff and nonparty Velocity Commercial Capital LLC (Velocity), dated June 24, 2016. The mortgage evinces that Velocity loaned plaintiff $540,000 and that to secure the note evincing the same, plaintiff pledged 1125 as security.
TIA, Kofman, Lowenthal, and LP also submit a letter sent by counsel to plaintiff's counsel, dated August 17, 2023, wherein moving defendants sought to have this action voluntarily [*4]discontinued because all of the claims were barred by the applicable statute of limitations.
It has long been held that absent a violation of law or some transgression of public policy, people are free to enter into contracts, making whatever agreement they wish, no matter how unwise they may seem to others (Rowe v Great Atlantic & Pacific Tea Company, Inc., 46 NY2d 62, 67-68 [1978]). Consequently, when a contract dispute arises, it is the court's role to enforce the agreement rather than reform it (Grace v Nappa, 46 NY2d 560, 565 [1979]). In order to enforce the agreement, the court must construe it in accordance with the intent of the parties, the best evidence of which being the very contract itself and the terms contained therein (Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]). It is well settled that "when the parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms" (Vermont Teddy Bear Co., Inc. v 583 Madison Realty Company, 1 NY3d 470, 475 [2004] [internal quotation marks omitted]). Moreover, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield at 569). Accordingly, courts should refrain from interpreting agreements in a manner which implies something not specifically included by the parties, and courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing (Vermont Teddy Bear Co., Inc. at 475). This approach serves to preserve "stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses [and] infirmity of memory" (Wallace v 600 Partners Co., 86 NY2d 543, 548 [1995] [internal quotation marks omitted]).
The proscription against judicial rewriting of contracts is particularly important in real property transactions, where commercial certainty is paramount, and where the agreement was negotiated at arm's length between sophisticated, counseled business people (Vermont Teddy Bear Co., Inc. at 475). Specifically, in real estate transactions, parties to the sale of real property, like signatories of any agreement, are free to tailor their contract to meet their particular needs and to include or exclude those provisions which they choose. Absent some indicia of fraud or other circumstances warranting equitable intervention, it is the duty of a court to enforce rather than reform the bargain struck (Grace v Nappa, 46 NY2d 560, 565 [1979]).
In the absence of fraud or other wrongful act, a party who signs a written contract is presumed to know and have assented to the contents therein (Pimpinello v Swift & Co., 253 NY 159, 162 [1930]; Metzger v Aetna Ins. Co., 227 NY 411, 416 [1920]; Renee Knitwear Corp. v ADT Sec. Sys., 277 AD2d 215, 216 [2d Dept 2000]; Barclays Bank of New York, N.A. v Sokol, 128 AD2d 492, 493 [2d Dept 1987]; Slater v Fid. & Cas. Co. of NY, 277 AD 79, 81 [1st Dept 1950]). As the court in Pimpinello noted,
Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.'So, if the party that is to seal the deed, can read himself and doth not, or being an illiterate or a blind man, doth not require to hear the deed read, or the contents thereof declared, in these cases albeit the deed be contrary to his mind, yet it is good and unavoidable.' That a party should be bound by a contract, or by a conveyance, which he had no will to make may seem anomalous. Professor Wigmore, in explanation, reasons that the [*5]actor, having the will to sign the writing, is bound by the consequence, 'reasonably to have been anticipated' from the signing of a document unread, that its terms might not truly express the intent of the signer
(id. at 162-163 [internal citations omitted].). Indeed, because a person who executes a writing is "under the obligation to exercise ordinary diligence to ascertain the terms of the document he[/she] sign[s]" (PNC Capital Recovery v Mech. Parking Sys., Inc., 283 AD2d 268, 272 [1st Dept 2001]), such person is presumed to have read and understood it, and any claim thereafter that the party did not understand what he/she signed is not a legally cognizable defense (Chase Lincoln First Bank, N.A. v Mark Homes, Inc., 170 AD2d 995, 995 [4th Dept 1991] ["Defendant Zemke seeks to avoid enforcement of his guarantee by averring that he failed to read the document before signing it, that he was never informed that he was signing a personal guarantee and that the legal implications of the document were never explained to him. Such allegations are insufficient to defeat plaintiff's motion."]; Mar. Midland Bank, N.A. v Idar Gem Distributors, Inc., 133 AD2d 525, 526 [4th Dept 1987]["A party to a writing is presumed to have read and understood the document which he signed. Moufarrege's allegation that he signed a document clearly captioned 'Unlimited Continuing Guaranty' without understanding the character of the document is wholly insufficient to establish a legal defense (internal citations omitted).]; Manufacturers & Traders Tr. Co. v Commercial Door & Hardware, Inc., 51 AD2d 362, 366 [4th Dept 1976] ["Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him" (internal citations and quotation marks omitted).]; Humble Oil & Ref. Co. v Jaybert Esso Serv. Sta., Inc., 30 AD2d 952, 952 [1st Dept 1968] ["The law does not relieve a person merely because he has failed to read a document which he has executed" (internal quotation marks omitted).]). Indeed, a person is bound by what he/she signs and cannot claim that he/she was fraudulently induced into signing it merely because the document alleged was nestled among a series documents said person was asked to sign or because it was represented that the document was merely a routine document (Dunkin' Donuts of Am., Inc. v Liberatore, 138 AD2d 559, 560 [2d Dept 1988] ["Moreover, the mere fact that the guarantor was not told that a personal guarantee was among the documents she was asked to sign is insufficient to establish a defense of fraudulent inducement. Assuming, arguendo, that DDA's sales manager referred to the guarantee as a routine document, that fact alone is not enough to establish fraud. Here, the guarantee clearly indicated that the signatories would unconditionally guarantee the performance of all duties and obligations of the corporation. In addition, the document was unambiguously identified as a personal guarantee. It has been uniformly held that if the facts represented are not matters peculiarly within the representor's knowledge, and the other party has the means available to him of knowing by the exercise of ordinary intelligence the truth or real quality of the subject of the representation, he must make use of those means or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations" (internal citations and quotation marks omitted).]). So strong is the policy which presumes that a party has read and understands what he/she has signed that as it relates to fraudulent misrepresentation, a person who executes a document is bound and cannot generally prevail on a fraud in the factum claim - that the party was induced into executing a document that he/she was led to believe was something altogether different (ABR Wholesalers, Inc. v King, 172 [*6]AD3d 1929, 1930-1931 [4th Dept 2019] [King further asserts that the court erred in granting plaintiff's motion because there are issues of fact concerning whether plaintiff misrepresented the note as a guaranty for future credit purchases. We also reject that contention. Such a contention constitutes one for fraud in the factum, also known as fraud in the execution, i.e., that the party was induced to sign something entirely different than what the party thought he or she was signing. However, a party to a writing is presumed to have read and understood the document which he or she signed and, absent some impairment, cannot justifiably rely on another's representation that the words used in the relevant document mean something other than what they plainly state" (internal citations and quotation marks omitted).]). To be sure, a fraud in the factum claim requires more than an allegation that a document was executed pursuant to a misrepresentation with respect to its contents; requiring allegations that "the plaintiff was induced to sign something different from what he or she thought was being signed [and only] arises if the signer is illiterate, blind, or not a speaker of the language in which the document is written" (Countrywide Home Loans, Inc. v Gibson, 157 AD3d 853, 856 [2d Dept 2018]; Anderson v Dinkes & Schwitzer, P.C., 150 AD3d 805, 806 [2d Dept 2017]; Ackerman v Ackerman, 120 AD3d 1279, 1280 [2d Dept 2014]).
Provided a writing is clear and complete, evidence outside its four corners "as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (W.W.W. Assoc., Inc. v Giancontieri, 77 NY2d 157, 162 [1990]; see Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]; Mercury Bay Boating Club Inc. v San Diego Yacht Club, 76 NY2d 256, 269-270 [1990]; Judnick Realty Corp. v 32 W. 32nd St. Corp., 61 NY2d 819, 822 [1984]). Whether a contract is ambiguous is a matter of law for the court to decide (id. at 162; Greenfield at 169; Van Wagner Adv. Corp. v S & M Enterprises, 67 NY2d 186, 191 [1986]). A contract is unambiguous if the language it uses has "definite and precise meaning, unattended by danger of misconception in purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion" (Greenfield at 569; see Breed v Ins. Co. of N. Am., 46 NY2d 351, 355 [1978]). Hence, if the contract is not reasonably susceptible to multiple meanings, it is unambiguous and the court is not free to alter it, even if such alteration reflects personal notions of fairness and equity (id. at 569-570). Notably, it is well settled that silence, or the omission of terms within a contract are not tantamount to ambiguity (id. at 573; Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]). Instead, the question of whether an ambiguity exists must be determined from the face of an agreement without regard to extrinsic evidence (id. at 569-570), and an unambiguous contract or a provision contained therein should be given its plain and ordinary meaning (Rosalie Estates, Inc. v RCO International, Inc., 227 AD2d 335, 336 [1st Dept 1996]). 
Notably, while the parol evidence rule forbids proof of extrinsic evidence to contradict or vary the terms of a written instrument, it has no application in a suit brought where there are claims of fraud in the execution of an agreement or to rescind a contract on the ground of fraud (Sabo v Delman, 3 NY2d 155, 161 [1957]; Adams v Gillig, 199 NY 314, 319 [1910]; Berger-Vespa v Rondack Bldg. Inspectors Inc., 293 AD2d 838, 840 [3d Dept 2002]).
A release "constitutes a complete bar to an action on a claim which is the subject of the release" (Centro Empresarial Cempresa S.A. v Am. Movil, S.A.B. de C.V., 17 NY3d 269, 276 [2011] [internal quotation marks omitted].]; Glob. Minerals and Metals Corp. v Holme, 35 AD3d 93, 98 [1st Dept 2006]; Hack v United Capital Corp., 247 AD2d 300, 301 [1st Dept 1998]). Indeed, pursuant to GOL § 15-3-3, a release "shall not be invalid because of the absence of consideration or [*7]of a seal." Much like a contract, when the language in the release is clear and unambiguous, the execution of a release is a binding jural act (Centro Empresarial Cempresa S.A. at 276; Booth v 3669 Delaware, Inc., 92 NY2d 934, 935 [1998]; Mergler v Crystal Properties Assoc., Ltd., 179 AD2d 177, 180 [1st Dept 1992]). A release is binding unless it is set aside on grounds of duress, illegality, fraud, or mutual mistake (Centro Empresarial Cempresa S.A. at 276; Booth at 935; Glob. Minerals and Metals Corp. at 98; Hack at 302; Mergler at 180). 
Based on the foregoing, plaintiff's third cause of action for fraud must be dismissed. 
As noted above, a pre-answer motion for dismissal based upon documentary evidence should only be granted when "the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen at 326; Leon at 88; IMO Industries, Inc. At 10 [1st Dept 1999]). Much like on a motion pursuant to CPLR § 3211(a)(7), on a motion to dismiss pursuant to CPLR § 3211(a)(1), the allegations in plaintiff's complaint are accepted as true, constructed liberally and given every favorable inference (Arnav Industries, Retirement Trust at 303; Hopkinson III at 837-838; Fern at 908-909).
Here, taking the allegations in the complaint as true, the complaint evinces that the transaction upon which the fraud claim is premised - that defendants schemed and conspired to defraud plainitff by keeping loan proceeds - occurred on November 6, 2014, when defendants failed to use the proceeds of the loan made to plaintiff to settle the tax, water, and sewer charges at 1125. Given the foregoing, however, the release submitted by TIA, Kofman, Lowenthal, and LP, executed on or about July 3, 2016 clearly and unambiguously evinces that plaintiff in exchange for $80,363.90 discharged the foregoing defendants from, inter alia, "claims and demands whatsoever from the beginning of the world to the day of the date of this RELEASE." To the extent that the transaction at issue, predates the release, the same is barred by the release. 
To be sure, a release "constitutes a complete bar to an action on a claim which is the subject of the release" (Centro Empresarial Cempresa S.A. at 276 (internal quotation marks omitted).]; Glob. Minerals and Metals Corp. at 98; Hack at 301), and like a contract, when the language in the release is clear and unambiguous, the execution of a release is a binding jural act (Centro Empresarial Cempresa S.A. at 276; Booth at 935; Mergler at 180). Accordingly, the release constitutes documentary evidence, which taking all allegations in the complaint as true, nevertheless bars the instant action against the moving defendants. 
Nothing submitted by plaintiff precludes resolution of the instant motion in favor of TIA, Kofman, Lowenthal, and LP.
In opposition to the instant motion, plaintiff submits an affidavit by Orlando Sewell (Sewell), plaintiff's owner, wherein addition to reiterating the allegations in the complaint, he states, in pertinent part, the following. In November 2014, he borrowed $288,000 from Pensco, solely to pay tax, water and sewer bills at 1125. On November 6, 2014, Kofman informed Sewell that Kofman had sent TIA a check for $248,680. Sewell states that the sole purpose of the transfer of the foregoing sums to TIA was to pay all taxes, water and sewer bills owed by 1125. TIA never made any payments towards the foregoing bills until July 17, 2015, when they sent the New York City Department of Finance $106,103.97, and then only to prevent a tax foreclosure proceeding. While he obtained a subsequent loan to pay off what he believed were additional taxes, he was unable to ascertain who paid tax, water, and sewer liens for 1125 and when they were paid. Sewell thought that the taxes at 1125 had merely increased. Sewell contends that in June 2016, he obtained a loan [*8]for $540,000 in order to satisfy the taxes that TIA failed to pay. Sewell states that he did not discover that TIA had not paid all of the outstanding tax, water and sewer liens at 1125 until August 2022. At some point, TIA paid nonparty White Roofs & Paint USA Corp. (White) $80,363 of plaintiff's money, who then did little work and the work they did perform was poor. On July 7, 2016, TIA also wired $32,640 to LP. On July 3, 2016, Sewell signed a release, but had no idea what he was signing, did not understand the release, was not represented by counsel, and was given the releases along with other documents. 
Sewell's affidavit does not avail plaintiff and contrary to his contention, it does not save the cause of action for fraud in the complaint nor does it, as attempted, invalidate the release, upon which, in part, moving defendants' motion is premised.
First, notwithstanding Sewell's affidavit, the documentary evidence establishes that, here, the cause of action for fraud accrued prior to the execution of the release, such that it is barred thereby. Specifically, on this record, plaintiff's cause of action for fraud accrued, at the very latest, in June 2016, such that it is barred by the release subsequently executed on July 3, 2016. To be sure, the statute of limitations for a cause of action for fraud is governed by CPLR § 213(8) and it is six years from accrual, two years after discovery of the fraud, or 2 years from when in the exercise of reasonable diligence, such fraud could have been discovered [id. "an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."]). Generally, "an action accrues, then, when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court" (Vigilant Ins. Co. of Am. v Hous. Auth. of City of El Paso, Tex., 87 NY2d 36, 43 [1995]; Aetna Life and Cas. Co. v Nelson, 67 NY2d 169, 175 [1986]). Thus, when the fraud alleged stems from a contract, a cause of action for fraud accrues on the date the contract is executed, at which point, there is reliance on the representations made by the defendant (Carbon Capital Mgt., LLC v Am. Exp. Co., 88 AD3d 933, 939 [2d Dept 2011 ["Here, Landow entered into the contract with Derivium on April 11, 2003, at which point his reliance on Selinger's representations would have given rise to his alleged injuries."]; (Kanterakis v Kanterakis, 125 AD3d 814, 816 [2d Dept 2015] ["As the plaintiff correctly asserts, the fraud causes of action against those defendants did not accrue until October 4, 2004, the date of the first allegedly fraudulent transaction in which those defendants were involved."]). In an action were it is alleged that the fraud was the failure to use funds deposited into escrow for its intended purpose, the cause of action accrues when the funds are transferred into escrow (D. Penguin Bros. Ltd. v Natl. Black United Fund, Inc., 137 AD3d 460, 461 [1st Dept 2016] ["The fraud claims, to the extent they accrued in 2005, when plaintiffs transferred funds into an escrow account."]; Ingrami v Rovner, 45 AD3d 806, 808 [2d Dept 2007] ["Since the causes of action accrued in February 2001 when the plaintiff transferred the money in reliance upon the defendants' allegedly false representations, the action was timely commenced in June 2004."]). When an action for fraud accrues from the date the fraud was discovered, the inquiry fixing that date is essentially when should the fraud have been discovered. Tha that end, "[t]he inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was possessed of knowledge of facts from which the fraud could be reasonably inferred" (Sargiss v Magarelli, 12 NY3d 527, 532 [2009] [internal quotation marks omitted].; Erbe v Lincoln Rochester Tr. Co., 3 NY2d 321, 326 [1957]).
Here, upon a review of the complaint itself, it is clear that the fraud alleged stems from TIA's failure to perform as agreed after the plaintiff's loan was transferred to it. To that end, the cause of action accrued on November 6, 2014, the date it is alleged that the foregoing funds were transferred by Kofman to TIA for that express purpose. Thus, the release barring all actions against moving defendants through the date of its execution on July 3, 2016, bars the instant action. Even if, as urged, the instant action accrued when plaintiff should have discovered the alleged fraud, that date, objectively, was not later than June 24, 2016, when upon obtaining a loan from Velocity, plaintiff could, with reasonable diligence, have discovered the fraud alleged. As evinced by the documents submitted by moving defendants and as admitted by Sewell in his affidavit, plaintiff obtained a subsequent loan on June 24, 2016. To that end, it is beyond cavil that where, as here, a party obtains a loan secured by real property, he/she is either made aware of all outstanding liens on the property or could have ascertained the same with the exercise off reasonable diligence. Thus, since plaintiff could have discovered that TIA had failed to satisfy all tax, water, and sewer obligations on or about June 24, 2016 in connection with the loan from Velocity, the cause of action accrued no later than that date and as such is nevertheless barred by the release. To the extent that plaintiff contends that it, through Sewell, did not discover the fraud until August 2022, as a matter of law, on this record, such claim is meritless.
Second, plaintiff's attempt to invalidate the release is without merit. As noted above, a release "constitutes a complete bar to an action on a claim which is the subject of the release" (Centro Empresarial Cempresa S.A. at 276 (internal quotation marks omitted).]; Glob. Minerals and Metals Corp. at 98; Hack at 301), and like a contract, when the language in the release is clear and unambiguous, the execution of a release is a binding jural act (Centro Empresarial Cempresa S.A. at 276; Booth at 935; Mergler at 180). Moreover, in the absence of fraud or other wrongful act, a party who signs a written contract is presumed to know and have assented to the contents therein (Pimpinello at 162; Metzger at 416; Renee Knitwear Corp. at 216; Barclays Bank of New York, N.A. at 493; Slater at 81). Accordingly, any claim thereafter that the party did not understand what he/she signed is not a legally cognizable defense (Chase Lincoln First Bank, N.A. at 995; Mar. Midland Bank, N.A. at 526; Manufacturers & Traders Tr. Co. at 366; Humble Oil & Ref. Co. at 952). Thus, here, where Sewell seeks to invalidate the release because he did not know what he was signing, had no legal representation in connection therewith, and because the release was one of many documents he was asked to sign, such assertions do not avail plaintiff. To be sure, a person is bound by what he/she signs and cannot claim that he/she was fraudulently induced into signing it merely because the document alleged was nestled among a series of documents said person was asked to sign or because it was represented that the document was a routine document (Dunkin' Donuts of Am., Inc. at 560). To the extent that Sewell implies that he was fraudulently induced into executing the release, that claim, one for fraud in the factum, is also without merit, where here the allegation undergirding the claim is that Sewell was tricked into signing a release whose purpose was not known to him and whose contents he did not understand (ABR Wholesalers, Inc. at 1930-1931 [King further asserts that the court erred in granting plaintiff's motion because there are issues of fact concerning whether plaintiff misrepresented the note as a guaranty for future credit purchases. We also reject that contention. Such a contention constitutes one for fraud in the factum, also known as fraud in the execution, i.e., that the party was induced to sign something entirely different than what the party thought he or she was signing. However, a party to a writing is presumed to have read and [*9]understood the document which he or she signed and, absent some impairment, cannot justifiably rely on another's representation that the words used in the relevant document mean something other than what they plainly state" (internal citations and quotation marks omitted).]).
To the extent that Sewell attempts to muddy and obfuscate the issues by asserting irrelevant events such as work performed to 1125 at TIA's behest by White and a transfer of money to LP by TIA, such attempts fails. None of those events are relevant to the salient issue before this Court, namely, whether the remaining cause of action for fraud is barred by the applicable statute of limitations.
Accordingly, TIA, Kofman, Lowenthal, and LP's motion seeking to dismiss the cause of action for fraud is granted.

Motion for Sanctions
TIA, Kofman, Lowenthal, and LP's motion seeking sanctions against counsel for plaintiff for the initiation of this action is granted. Significantly, on this record, it is clear that none of the causes of action interposed against TIA, Kofman, Lowenthal, and LP are viable since at the very least they are all barred by the applicable statute of limitations. Indeed, counsel for plaintiff was so-apprised before moving defendants made this motion. Thus, the instant action is frivolous since when it was initiated it lacked any basis in law or fact and was continued after plaintiff's counsel was so-apprised.
22 NYCRR 130-1(a) states that
[t]he court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct as defined in this Part.
22 NYCRR 130-1(c)(1), (2), and (3) define frivolous conduct as conduct that
is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law . . . is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or . . . asserts material factual statements that are false.
Sanctions pursuant to 22 NYCRR 130-1.1 are generally awarded when the behavior alleged to be worthy of sanctions has an element of frivolity, or if a party against whom sanctions is sought engages in frivolous conduct, such as advancing arguments devoid of legal merit, using legal procedures to delay the resolution of an action, or using the legal process as a means to harass another party. When the court finds evidence of the foregoing behavior, it can sanction the attorney and also order that the offending party pay the other party's legal fees (Doone v Reiser, 272 AD2d 368 [2d Dept 2000] [Court held that sanctions were warranted when the "entire third-party action, including the various motions made by the third-party plaintiff, is frivolous within the meaning of 22 NYCRR 130-1.1 (c) in that it is without basis in law or fact, and was designed merely to harass and delay his opponents."]; Hirschfeld v Daily News, L.P., 269 AD2d 248, 250 [1st Dept 2000] ["Defendants' motion for sanctions should be granted against plaintiff, as this appeal's lack of legal or factual basis should have been apparent to plaintiff from the outset. At the time that he filed this appeal, if not sooner, plaintiff was well aware that he had been indicted both for tax fraud and for criminal solicitation, and that the articles' statements about him were true and non-defamatory. Plaintiff is therefore directed to pay defendants' expenses and attorneys' fees for this appeal, as well [*10]as for the hearing at which the amount of sanctions will be determined" (internal citations omitted).]; Good Old Days Tavern, Inc. v Zwirn, 261 AD2d 288, 289 [1st Dept 1999] [Court imposed a sanction of $1000 upon defendant for making a frivolous and meritless motion. Amount was meant to compensate plaintiff for having to oppose motion.]; Corto v Lefrak, 203 AD2d 94, 96 [1st Dept 1994] [Court imposed sanction upon plaintiff when evidence demonstrated that the action therein was frivolous, vexatious, and initiated to harass the defendant.]; Beninati v Nicotra, 239 AD2d 242 [1st Dept 1997]). In assessing whether to award sanctions, the threshold inquiry is whether the action is "completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law" (Wagner v Goldberg, 293 AD2d 527, 528 [2d Dept 2002]; Felix v Herby Realty Corp., 287 AD2d 683, 685 [2d Dept 2001]). When awarding sanctions, the court must issue a written decision detailing the offending conduct, why said conduct was deemed frivolous, and why the amount awarded is appropriate (22 NYCRR 130—1.1[d]; Breslaw v Breslaw, 209 AD2d 662, 663 [2d Dept 1994]). Once the Court concludes that an action is frivolous, it can award costs amounting to actual attorney's fees incurred (Mascia v Maresco, 39 AD3d 504, 506 [2d Dept 2007]; Heilbut v Heilbut, 18 AD3d 1, 7 [1st Dept 2005]).
Based on the foregoing, the record establishes that the initiation of the instant action was frivolous inasmuch as it was clear that when the complaint was filed, and the action initiated, the applicable statute of limitations had expired for each and every cause of action and that the instant action was barred by the release executed by plaintiff. Although the Court confines the dismissal of the cause of action for fraud to the fact that the same is barred by the release, which plaintiff executed, the record also demonstrates that dismissal would have been warranted pursuant to CPLR § 3211(a)(5), because the statute of limitations to bring this action expired years ago. 
Indeed, the record in this action is paradigmatic of sanctions pursuant to 22 NYCRR 130-1(a) because if true, plaintiff's allegations of unjust enrichment [FN4]
and conversion are particularly egregious. Nevertheless the record also reveals that here, the applicable law quite ostensibly precluded recovery any time after 2018, such that counsel should have never initiated this action in the first place. 22 NYCRR 130-1(a) puts the onus on attorneys, who as it relates to the law occupy a superior position than the lay people who seek their legal advice and counsel. Thus, it is counsel who must refrain from initiating and continuing frivolous litigation no matter how deleterious the conduct about which a client complains. Here, of course, counsel for plaintiff did the exact opposite.
Specifically, plaintiff's counsel brought this action even though he knew or should have known it was barred by the applicable statute of limitations and the release executed by plaintiff. Even if counsel can somehow claim ignorance of the law, which of course does not avail him, the frivolous conduct was further compounded by continuing this action despite being apprised by moving defendants' counsel, in a very detailed and lengthy letter, which explained that this action was barred by the applicable statute of limitations. Rather than discontinue the action, plaintiff chose to continue the same, forcing moving defendants to make this motion and then only withdrawing three of its causes of action. Indeed, much like the causes of action for breach of contract, unjust enrichment and conversion, the cause of action for fraud is equally devoid of merit since, as discussed above, it accrued no later than June 24, 2016, when plaintiff obtained a second mortgage, such that even under a theory of belated discovery, the instant action for fraud could have been brought no later than June 24, 2018 - two years after plaintiff, employing reasonable diligence should have discovered the fraud alleged, namely that moving defendants had not used the proceeds of its loan to satisfy tax, water, and sewer charges. This action, was brought when the complaint was filed on June 13, 2023 (CPLR § 304[a] ["An action is commenced by filing a summons and complaint or summons with notice in accordance with rule twenty-one hundred two of this chapter. A special proceeding is commenced by filing a petition in accordance with rule twenty-one hundred two of this chapter."]), almost five years later, such that it is untimely. The foregoing notwithstanding, the cause of action for fraud was equally devoid of merit for the very reasons discussed by this Court in length - it was barred by the release. 
Accordingly, having found that this action is frivolous this Court finds that plaintiff is responsible to reimburse moving defendants for the legal fees they incurred in defending this action. Moreover, since counsel for plaintiff should have recognized, if not at first, then certainly after the letter from moving defendants' counsel, the meritless nature of this action, sanctions against him in the amount of $1,000 [FN5]
are also appropriate. This is particularly true here, where plaintiff continues to take action at variance with applicable law. Specifically, on November 30, 2023, plaintiff filed an amended complaint [FN6]
well beyond the time it could have done so without leave of court (CPLR [*11]§ 3025[a]["A party may amend his pleading once without leave of court within twenty days after its service, or at any time before the period for responding to it expires, or within twenty days after service of a pleading responding to it."]). It is hereby
ORDERED that the complaint be dismissed, with prejudice. It is further
ORDERED that within 30 days of service upon plaintiff of an invoice for the legal fees and costs incurred by TIA, Kofman, Lowenthal, and LP in defending this action, plaintiff reimburse moving defendants for the same. It is further
ORDERED that within 30 days hereof, TIA, Kofman, Lowenthal, and LP submit a judgment to Clerk of the Court for the sanctions, costs, and legal fees, ordered herein.[FN7]
It is further
ORDERED that TIA, Kofman, Lowenthal, and LP serve a copy of this Decision and Order with Notice of Entry upon plaintiff within thirty (30) days hereof.
Dated: December 12, 2023
Bronx, New York
FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1:Conceding that the causes of action for breach of contract, unjust enrichment and conversion are untimely, plaintiff withdraws them (NY St Cts Elec Filing [NYSCEF] Doc No. 24, Farensbach aff at 1 ["Plaintiff opposes the motion in its entirety except that Plaintiff withdraws its First, Second, and Fourth Causes of Action as same are untimely."]).

Footnote 2:LP's connection to this action is unclear. Moving defendants do not clarify the same and despite failing to detail the basis of LP's liability, plaintiff merely asserts causes of action against LP. Nevertheless given plaintiff's unrebutted allegations that Kofman was suspended from the practice of law, and that Lowenthal & Kofman, PC is know defunct, it is clear that LP is successor to Lowenthal & Kofman, PC.

Footnote 3:Since the release executed by plaintiff precludes any claims against TIA, Kofman, and Lowenthal & Kofman, PC's administrators and successors, to the extent that it is alleged that LP is the successor to Lowenthal & Kofman, PC, and that Lowenthal was an attorney with Lowenthal & Kofman, PC, the release also bars the action against LP and Lowenthal.

Footnote 4:Inasmuch as the complaint fails to identify the contract alleged to have been breached, moving defendants correctly aver that the complaint fails to state a cause of action for breach of contract (Harris v Seward Park Hous. Corp., 79 AD3d 425, 426 [1st Dept 2010] ["The elements of such a claim include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages."]). Accordingly, barring the expiration of the statute of limitations and the release, the claims for unjust enrichment and conversion would have been viable (cf. Corsello v Verizon New York, Inc., 18 NY3d 777, 790 [2012]; Fesseha v TD Waterhouse Inv. Services, Inc., 305 AD2d 268, 269 [1st Dept 2003]).

Footnote 5:Pursuant to 22 NYCRR 130-1.2, sanctions imposed pursuant to Part 130 can be as high as $10,000. Here, for the reasons amply discussed, $1,000 is an appropriate financial sanction since despite the frivolous nature of this action, it has been terminated in its infancy and the moving defendants were not forced to incur the costs associated with discovery and further motion practice. Thus, a greater financial sanction is unwarranted.

Footnote 6:It is well settled that a court can take judicial notice of any and all undisputed court records and files (Khatibi v Weill, 8 AD3d 485, 485 (2d Dept 2004). Indeed, this rule includes the court's own court files and extends to files related to proceedings in other courts (MJD Construction, Inc. v Woodstock Lawn & Home Maintenance, 299 AD2d 459, 459 [2d Dept 2002]; Ptasznick v Schultz, 247 AD2d 197, 199 [2d Dept 1998]; Warner v Board of Education of the City of New York, 14 AD2d 300, n1 [1st Dept 1961]). When a court chooses to take judicial notice of records, it obviates a foundation for purposes of admitting said documents into evidence (Bernasconi v Aeon, LLC, 105 AD3d 1167, 1169 [3d Dept 2013]; Lagano v Soule, 86 AD3d 665, 667, n 5 [3d Dept 2011]; Secretary of Dept. of Hous. and Urban Dev. v Torres, 2 Misc 3d 53, 55 [App Term 2003]). Here, the Court will takes judicial notice of the amended complaint filed by plaintiff (NY St Cts Elec Filing [NYSCEF] Doc No. 39).

Footnote 7:Pursuant to 22 NYCRR 130-1.2, "[a]n award of costs or the imposition of sanctions or both shall be entered as a judgment of the court"